**UNITED STATES of America, Appellee,**

v.

**Freddie HILTON, Appellant.**

**No. 826, Docket 74–2675.**

United States Court of Appeals, Second Circuit.

Argued June 20, 1975.

Decided Aug. 8, 1975.

David G. Trager, U. S. Atty., E. D. N. Y., Edward R. Korman, Chief Asst. U. S. Atty., Paul B. Bergman, Asst. U. S. Atty., of counsel, for appellee.

Robert Bloom, New York City, for appellant; Lawrence Stern, Brooklyn, of counsel.

Before LUMBARD, GIBBONS,* and GURFEIN, Circuit Judges.

GIBBONS, Circuit Judge:

This is an appeal from a sentence rendered on December 23, 1974. It followed appellant Freddie Hilton's conviction, by a jury, of conspiracy to rob a bank. 18 U.S.C. § 371. The same jury acquitted Hilton of other substantive charges dealing with participation in the commission of the robbery. On March 18, 1975, after Hilton's brief on appeal was filed, the case was remanded to the district court, upon the suggestion of the United States. A direction was made to conduct promptly a hearing with respect to the consequences of the government's failure to reveal, before cross-examination of its chief witness, Avon White, the existence of a letter dated February 8, 1974 sent by White to Assistant United

---

* United States Circuit Judge for the Third Circuit, sitting by designation.

States Attorney Robert Clarey.[1] That hearing was held on April 10, 1975. On May 2, 1975 Chief Judge Mishler filed a memorandum of decision holding that the letter would have offered nothing of significance to defense counsel for cross-examination purposes, and that in the hands of skilled defense counsel no reasonable doubt would have been induced in the minds of the jurors. The case is now before us on an appeal which asserts numerous trial errors, and which also asserts that the district court erred both in its failure to grant a new trial because of the nondisclosure of the April 10, 1975 letter and in the manner in which the hearing with respect to that letter was conducted. We conclude that the hearing with respect to the nondisclosure of the February 8, 1974 letter inadequately developed the facts with respect to one significant issue, and we remand for a further hearing, retaining jurisdiction of the appeal until that hearing has been completed. Since a new trial may be ordered as a result of this further hearing, we do not now address any other ground of appeal urged on Hilton's behalf.

## I. The Governing Legal Standard.

 The legal standard to be applied in determining whether a new trial should be granted when the government fails to produce Jencks Act material, 18 U.S.C. § 3500, depends on whether the suppression was deliberate or inadvertent. If the government deliberately suppresses evidence or ignores evidence of such high value that it could not have escaped its attention, a new trial is warranted if the evidence is merely material or favorable to the defense. But if the government's failure to disclose is inadvertent, a new trial is required only if there is a significant chance that this added item, developed by skilled counsel, could have induced a reasonable doubt in the minds of enough jurors to avoid a conviction.[2]

Obviously diverse policy considerations are at work here. On the one hand, fairness to the defendant dictates a new trial where there has been even inadvertent failure to disclose evidence which in the hands of skilled counsel might have induced a reasonable doubt. On the other hand, it is the policy of the court that it, and not the United States Attorney's office, will rule on the materiality of evidence which may be only marginally useful to the defense.

## II. The Proceedings on Remand.

Following this court's March 18, 1975 remand, the district court sent a letter to Mr. Bloom, Hilton's trial counsel, notifying him of its desire to hold a hearing with respect to the letter on March 31, 1975. Counsel replied that he was engaged in the trial of a state criminal case which would not be completed for several weeks. The district court then

---

1. The letter read:

"2-8-74

Att: Mr. Clarey

I am writing you this letter to see if there is any way possible that you can have me moved from Ossining Correctional Facility to another insitution [sic] cause I am being held in solitary confinement and I am on the verge of having a nervous break down and I am desperately in the need of your help. Mr. Clarey I know that this matter is out of your hands but I would really appreciate it if you would get together with the people concerned[.] I have been very cooperative with the government and as you know I am ready to go with you this time on the *Government vs. Hilton* and I will continue to do so as long I know that people are trying to help me. I wont [sic] let you down when you need me so dont [sic] let me down now cause I really need you now[.] Please help me[.]

Sincerly [sic] yours
Avon White 74-608"

(Government Ex. A at April 10, 1975 hearing).

2. *E. g., United States v. Rosner*, 516 F.2d 269 (2d Cir. 1975); *United States v. Sperling*, 506 F.2d 1323, 1333 (2d Cir. 1974), *cert. denied*, 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed. 2d 439 (1975); *United States v. Kahn*, 472 F.2d 272, 287 (2d Cir.), *cert. denied*, 411 U.S. 982, 93 S.Ct. 2270, 36 L.Ed.2d 958 (1973); *United States v. Miller*, 411 F.2d 825, 832 (2d Cir. 1969); *United States v. Keogh*, 391 F.2d 138, 147–48 (2d Cir. 1968).

rescheduled the hearing for April 18, 1975, informing Bloom that a lengthy trial commencing on April 14, precluded the court's availability on any other day until May. On March 31, 1975 the state court charges against Mr. Bloom's client were dismissed. At that point Bloom announced that he would thereafter appear as co-counsel for another defendant in the same case. On April 4, 1975 Mr. Bloom asked that the April 18, 1975 hearing be rescheduled to another date because Hilton, a practicing Muslim, could not appear in court on a Friday. Although Bloom claims that he merely suggested the date might be convenient, and did not understand it to be fixed finally, April 10, 1975 was set for the hearing. On April 9, 1975 the state court trial went to the jury. Deliberation continued into the next day. Mr. Bloom called the district court on April 10, 1975 to say he was awaiting the return of the jury, and believed it likely he would be unable to appear. He was told that the hearing would be delayed until 3:00 p. m., but would take place that day. He responded that he would not appear. The state court jury returned a verdict at 4:05 p. m. Judge Mishler, however, held the hearing as scheduled. At the hearing, at which Hilton was present, but without Bloom, the district court offered to assign counsel. Hilton rejected this offer, and he personally participated by cross-examining Avon White. Hilton did not, however, cross-examine Robert L. Clarey or Peter Trebner, former Assistant United States Attorneys or Robert M. McCartin, a special agent to the Federal Bureau of Investigation. These witnesses, not White, had such knowledge as exists as to the circumstances surrounding the nondisclosure of the February 8, 1974 letter.

The court directed that a transcript of the April 10, 1975 hearing be prepared and gave Mr. Bloom an opportunity to file a brief. Thereafter the court filed a memorandum which (1) infers but does not specifically find that the nondisclosure of the February 8, 1974 letter was inadvertent; (2) finds that the letter was producible Jencks Act material; (3) finds that the letter in the hands of skilled defense counsel could not have induced a reasonable doubt in the minds of the jury.

### III. Effect of the Absence of Cross-Examination.

██ As we indicated above, Hilton did not cross-examine the government witnesses with respect to the events leading to the government's failure to disclose the letter. It seems likely that as a layman he was entirely unaware of the prophylactic rule which this court applies in cases of deliberate nondisclosure. Assuming the failure to disclose was inadvertent, the trial judge, who knew full well what transpired at the trial, had to determine whether the letter, which bears on credibility and bias, would have made any difference. He knew what evidence had been propounded, the demeanor of the witnesses, the effect of direct and cross-examination and the reaction of the jurors. The probable effect that the letter would have had on the defense's case was also a matter well-suited for argument. And counsel was given the opportunity to file a brief. However, the issue before us is more than reviewing the trial court's determination of whether a reasonable doubt would have been induced in the jurors. Before we can apply the reasonable doubt standard we must determine whether the trial court was correct in concluding that the suppression was inadvertent. Our interest in enforcing the prophylactic rule requiring that a new trial be granted in cases of deliberate nondisclosure dictates that the facts surrounding the nondisclosure be developed in an adversarial context. If we were prepared to hold that the district court erred in concluding that the February 8, 1974 letter could not have induced a reasonable doubt, that alone would be a ground for a new trial which would obviate a remand. We are not prepared so to hold. Thus we conclude that the case must be remanded for a further hearing at which time counsel for Hilton shall be

afforded an opportunity to cross-examine those government witnesses familiar with the circumstances surrounding the nondisclosure. Of course, other evidence may be offered which may tend to show that the nondisclosure was other than inadvertent.

### Conclusion.

The case will be remanded to the district court for the limited purpose of a hearing consistent with this opinion. The court retains jurisdiction of the appeal, which upon completion of the hearing will be referred to the same panel without further briefing on any issue except that to which the hearing on remand is addressed.