Wayne F. PUTNAM, Appellant,

v.

STATE of Alaska, Appellee.

No. 3475.

Supreme Court of Alaska.

Dec. 19, 1980.

Mary E. Greene, Thomas Nave, Asst. Public Defenders, Fairbanks, Brian Shortell, Public Defender, Anchorage, for appellant.

W. H. Hawley, Asst. Atty. Gen., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.*

## OPINION

BURKE, Justice.

On July 16, 1976, Wayne F. Putnam was indicted on charges of arson, burning with intent to defraud an insurer and obtaining money by false pretenses.[1] Following a trial by jury he was convicted on all three charges. The court suspended the imposition of sentence for five years and placed Putnam on probation, on the special conditions that he serve 90 days in jail and pay $170,801.00 in restitution. He now appeals contending that the trial court erred in failing to dismiss his allegedly invalid indictment and in refusing to strike the testimony at trial of one of the state's witnesses or grant other relief as a sanction for the state's failure to produce or explain the loss or destruction of two taped interviews with this witness. The state cross-appeals maintaining that the sentence imposed was too lenient. We conclude that the case must be remanded for a further evidentiary hearing concerning the circumstances surrounding the loss or destruction of the tapes. In the event that it is unnecessary to reverse the conviction as a result of the further hearings, we have decided to pass on the sentence appeal so that an additional appeal on that point will be unnecessary. We expressly disapprove of the sentence imposed as being too lenient.

At approximately 6:00 p. m. on December 6, 1974, a fire broke out in the carpet division of Putnam Services, Inc., in Fairbanks, Alaska. This fire resulted in extensive damage to the business. The circumstances surrounding the fire appear to be as follows.

Wayne Putnam, President of Putnam Services, Inc., was in serious financial difficulty prior to the fire. He was behind in his payments in a creditor payback plan and was consistently writing checks which were returned for insufficient funds. In addition, on the day of the fire he had been served with a notice to vacate the premises because of his failure to pay rent. Despite his poor financial condition, Putnam had doubled the fire insurance on his inventory, obtaining the maximum coverage available, on November 1, 1974.

Putnam claimed that on the day of the fire he had left the building with his wife and two children between 5:30 and 6:00 p. m. to catch a plane to Anchorage. He was in fact on this plane, which was due to depart at 7:30 p. m., when he was notified of the fire. However, paperboy William Dennis, as he made his collection rounds, saw Putnam apparently checking the doors of the building between 6:00 and 6:10 p. m. When he left the area approximately three minutes later, Dennis did not see Putnam, but as he walked away from the building, he saw bright flames at the northeast corner of the building. Dennis, however, did not report the fire because he believed it

---

* This case was submitted to the court for decision prior to Justice Boochever's resignation.

1. Putnam was charged and convicted under the former provisions of AS 11.20.010 (first degree arson), AS 11.20.070 (burning to defraud an insurer) and AS 11.20.360 (obtaining money by false pretenses). In its recent revision of the state's criminal statutes, the Alaska Legislature repealed those sections effective January 1, 1980. Ch. 166, § 21, SLA 1978. The conduct proscribed in those sections is now covered by AS 11.46.400 (first degree arson) and AS 11.-46.120 (theft in the first degree).

was only someone burning trash. Michael Rice, an employee of Putnam's, stated that at approximately 5:30, when Rice and Bruce Putnam left the building to deliver carpet, Wayne Putnam was left alone at the business.

After the fire, Putnam submitted proof of loss statements to his insurance company totalling $78,994.99. This amount was subsequently paid to Putnam by the insurance company. In support of his proof of loss statements, Putnam admittedly submitted invoices signed by himself and Toby Chastine indicating that Putnam had paid $34,-417.75 to Chastine for a shipment of carpets which had purportedly been delivered on November 26, 1974. Chastine originally maintained that he had shipped and been paid for this carpet. However, in a second interview with Investigator Hildreth, Chastine admitted that the shipment had never been made and that at Putnam's request he had drawn up false invoices which Putnam had subsequently submitted to the insurance company.

On July 16, 1976, the grand jury indicted Putnam on charges of first degree arson, burning with intent to defraud an insurer and obtaining money by false pretenses. Putnam was tried and convicted on all three charges. This appeal and cross-appeal followed.

 We turn first to Putnam's challenge of the validity of the grand jury indictment.[2] Putnam's first argument goes to the presentation of hearsay evidence. In Alaska, hearsay testimony which is not subject to a recognized exception to the hearsay rule may be presented to a grand jury only upon a showing of "compelling justification." *Adams v. State*, 598 P.2d 503, 508 (Alaska 1979); Alaska Criminal Rule 6(r).[3] Putnam specifies three instances where no justification was given for the use of hearsay and a number of other instances where the purported justification was that the hearsay declarant was out of state but would be available for trial.[4] We note,

2. Although the state does not raise any general objection, we note the insufficiency of Putnam's statement of this issue in his statement of points on appeal. The relevant portion of Putnam's statement of points on appeal provides: "Did the Court err in denying Defendant's Motion to Dismiss the Indictment on the grounds that improper evidence had been presented to the grand jury." Alaska Appellate Rule 9(e) requires "a concise statement of the points on which [an appellant] intends to rely on the appeal." The purpose of this rule is to enable the appellee to designate additional portions of the record and transcript and to inform both the appellee and this court of the matters which we shall be called upon to decide. *Lewis v. Anchorage Asphalt Paving Co.*, 535 P.2d 1188, 1195 (Alaska 1975). While the rule does not require an elaboration of the legal theories on which the appeal is based, *id.*, an appellant should specify with some particularity the factual basis underlying his claim of error. *See Myers v. Sill*, 497 P.2d 920, 923 (Alaska 1972). For example, in the case at bar, the statement of points on appeal should have referred to the specific testimony being challenged. General allegations of error such as those presented in this case serve no useful purpose. Under Rule 9(e), we need not address any issue not properly included in the statement of points on appeal. *See, e. g., Hootch v. Alaska State-Operated School System*, 536 P.2d 793, 808 n.58 (Alaska 1975); *Miller v. City of Fairbanks*, 509 P.2d 826, 829 (Alaska 1973).

Since the State has fully responded to the issues raised in Putnam's brief, however, and the record appears adequate, we have chosen not to dispose of this issue on this ground. Counsel should be forewarned, however, that in the future we may not be so lenient. *See Orbeck v. Wheeler Construction Co.*, 394 P.2d 781, 783 (Alaska 1964).

3. Alaska Criminal Rule 6(r) provides:

*Admissibility of Evidence.* Evidence which would be legally admissible at trial shall be admissible before the grand jury. In appropriate cases, however, witnesses may be presented to summarize admissible evidence if the admissible evidence will be available at trial. Hearsay evidence shall not be presented to the grand jury absent compelling justification for its introduction. If hearsay evidence is presented to the grand jury, the reasons for its use shall be stated on the record.

4. It is clear that a mere statement that a witness is out of state but will be available for trial is insufficient justification for the use of hearsay before a grand jury. The state must show that the witness' absence was necessary, such as when the witness has been called to the side of a dying relative. *State v. Johnson*, 525 P.2d 532 (Alaska 1974). A mere desire to avoid the inconvenience and expense necessarily occasioned in bringing an out of state witness to

however, that in his arguments before the trial court Putnam conceded that the witnesses' absence from the state was a sufficiently compelling justification to allow the use of hearsay. Having conceded this point below, Putnam cannot now reverse his position on appeal. Alaska Crim.R. 12(b) and 12(e).[5] We thus need only examine the three specific instances where Putnam contends that hearsay evidence was presented without any justification at all.

■ The first instance where hearsay evidence was presented without justification is Assistant Fire Chief Schechter's testimony that William Dennis told him that he saw Putnam at the scene just before the fire broke out. We do not feel the lack of justification requires dismissal of the indictment in this instance. Hearsay testimony relating Dennis' statement was subsequently presented to the grand jury by two more witnesses. On each of these occasions the state justified its use of hearsay by explaining that Dennis was currently out of the state but would be available for trial. As noted above, Putnam conceded that this was a valid justification for the use of hearsay. Thus, although Criminal Rule 6(r) was violated by the presentation of this unjustified hearsay testimony, we are convinced that the defendant was in no way prejudiced. *See State v. Taylor*, 566 P.2d 1016, 1019 (Alaska 1977).

■ The second instance of allegedly unjustified hearsay evidence was Marion Bennett's testimony that while employed by Putnam after the fire he received a number of calls at work from creditors of the business seeking to collect on their debts. The state responds that under the verbal act doctrine Bennett's testimony was not within the purview of Criminal Rule 6(r). We find the state's argument persuasive. Testimony regarding an out of court statement is only hearsay when it is offered to prove the truth of the matter stated. *Watson v. State*, 387 P.2d 289, 293 (Alaska 1963). Where such testimony is offered merely to establish the fact that the statement was made, and not to prove the truth of the matter stated, the hearsay rule does not apply. *Id.; Frink v. State*, 597 P.2d 154, 162 (Alaska 1979). For example, testimony that telephone calls from gamblers were received at a defendant's residence has been held admissible to prove the nature of the defendant's enterprise.[6] Similarly, testimony that telephone calls were received from a business' creditors is admissible as circumstantial evidence of the financial condition of the business.

■ Putnam's final claim of unjustified hearsay evidence was Investigator Hildreth's testimony to the effect that carpet mill owners and truck rental agencies in Georgia denied that a shipment of carpet was sent to Putnam's business in late No-

Alaska is clearly not a compelling justification. *Metler v. State*, 581 P.2d 669, 673 (Alaska 1978); *State v. Gieffels*, 554 P.2d 460, 465 (Alaska 1976).

5. Alaska Criminal Rule 12 provides, in pertinent part:

(b) *Pre-Trial Motions.* Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Any or all of the following shall be raised prior to trial:

(1) Defenses and objections based on defects in the institution of the prosecution;

(2) Defenses and objections based on defects in the indictment or information (other than a failure to show jurisdiction in the court or to·charge an offense, which objections shall be noticed by the court at any time during pendence of the proceeding);

(3) Motions to suppress evidence on the ground that it was illegally obtained.

(4) Requests for a severance of charges or defendants under Rule 14.

. . . .

(e) *Effect of Failure to Raise Defenses or Objections.* Failure by the defendant to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to section (c), or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.

6. *United States v. Pasha*, 332 F.2d 193, 196–97 (7th Cir. 1964), *cert. denied* 379 U.S. 839, 85 S.Ct. 75, 13 L.Ed.2d 45 (1964); 2 Wharton Criminal Evidence § 274 (13th ed. Tarcia 1972).

vember, 1976. We decline to consider this question since this statement was not objected to before the trial court in Putnam's motion to dismiss the indictment. *See Anthony v. State*, 521 P.2d 486, 496 (Alaska 1974); *Taggard v. State*, 500 P.2d 238, 243 (Alaska 1972).

 Putnam next maintains that even if the hearsay testimony presented to the grand jury can survive scrutiny under Criminal Rule 6(r), it cannot satisfy the additional requirements of detail and reliability imposed by decisions of this court.[7] Once again, however, this argument was not raised before the trial court. We therefore decline to consider the question. *Id.*

We next turn to Putnam's contention that the prosecutor improperly influenced the grand jury. In essence, Putnam argues that through Investigator Hildreth's testimony the prosecutor influenced the grand jury in ways impermissible at trial. Putnam's primary objection goes to Investigator Hildreth's testimony concerning the character of hearsay declarants Chastine and Dennis. It is Putnam's position that by eliciting character evidence concerning the credibility of these hearsay declarants from Investigator Hildreth, the main investigator in the case, the state overstepped the proper bounds of prosecutorial conduct. We disagree.

 We have often stated that when presenting a case to a grand jury the prosecutor should not make statements or arguments which would influence the grand jury in a manner which would be impermissible at trial. *Coleman v. State*, 553 P.2d 40, 48 (Alaska 1976); *Anthony v. State*, 521 P.2d 486, 496 n.37 (Alaska 1974) *quoting* American Bar Association Standards Relating to the Prosecution Function § 3.5(b) (approved draft 1971). Putnam would have

us extend this rule to statements voluntered by law enforcement witnesses. We decline to take this step. Absent some evidence that the prosecutor knew or should have known that the response to his question would contain improper evidence, we refuse to hold him answerable for the utterances of the witness. By this we do not mean to imply that a prosecutor need not be concerned with the answers which his questions might elicit. He remains under a duty to present to the grand jury only that evidence which he believes would be admissible at trial. ABA Standards Relating to the Prosecutorial Function § 3.6(a) (approved draft 1971). This duty includes an obligation to phrase questions in such a way as to minimize the possibility that the response will contain improper evidence. In the case at bar there is no evidence that the prosecution intended to elicit improper testimony from Hildreth. We therefore conclude that no violation of the ABA Standard occurred.

 Moreover, even if Investigator Hildreth's testimony was reviewable under this standard, we do not believe that dismissal of the indictment would be required since, in our opinion, the testimony would have been admissible at trial. As a general rule, the introduction of evidence regarding a witness' character for truth and veracity is admissible only after the witness' character has been challenged. Alaska Rules of Evidence 607(b), 608(a);[8] C. McCormick, Law of Evidence § 49, at 102–3 (2d ed. 1972); J. Wigmore, Evidence § 1104 (Chadbourn rev. ed. 1972). We note, however, that this rule directly conflicts with the general rule in Alaska that requires proof of a hearsay declarant's credibility when hearsay evidence has been presented to a grand jury.[9] This conflict places the

7. We have often held that in order to support a grand jury indictment, the hearsay evidence must present a sufficiently detailed account of the defendant's activity and the hearsay declarant must be sufficiently reliable. *See, e. g.,* *Metler v. State*, 581 P.2d 669, 673 (Alaska 1978); *Taggard v. State*, 500 P.2d 238, 242–43 (Alaska 1972).

8. The Alaska Rules of Evidence were not yet in effect at the time of Putnam's trial. On this point, however, they do reflect the same rule that was in effect at that time.

9. *See, e. g., Metler v. State*, 581 P.2d 669, 673 (Alaska 1978); *Taggard v. State*, 500 P.2d 238, 242–43 (Alaska 1972).

state in an untenable position. The state is required to prove the credibility of hearsay declarants while at the same time it is precluded from presenting the only reasonably available evidence tending to establish this point. We therefore hold that when hearsay evidence has been presented to a grand jury, character evidence concerning the hearsay declarant's credibility is permissible to the same extent to which it would be permissible at trial had the declarant's character been challenged. *See Freeman v. State*, 486 P.2d 967 (Alaska 1971); Alaska Rules of Evidence § 405(a). Applying this rule to the case at bar, we conclude that Investigator Hildreth's testimony concerning the character of these hearsay declarants was within the bounds of permissible evidence.[10]

Putnam also maintains that the grand jury was improperly influenced by Investigator Hildreth's unjustified hearsay testimony relating an unnamed Fire Marshall's comment that the building "didn't look right" and the fact that Putnam took his business records with him when he left for Anchorage the night of the fire. While there is no doubt that this testimony violated Criminal Rule 6(r), our review of the record has convinced us that no substantial prejudice resulted. Dismissal of the indictment is therefore not required on this ground.[11] *See Webb v. State*, 527 P.2d 35 (Alaska 1974).

Putnam's final challenge to the validity of the indictment is that the grand jury proceedings when viewed as a whole violated his constitutional right to due process of the law. *See Coleman v. State*, 553 P.2d 40, 47 (Alaska 1976). After carefully examining the transcript of the grand jury proceedings, we are unable to agree with Putnam's contention. Although the prosecutor could, perhaps, have acted with more restraint, we are unable to find any instance of prejudicial evidence or conduct which would rise to the level of a violation of due process.

We turn now to Putnam's contention that the trial court erred in refusing to strike the testimony at trial of state witness Toby Chastine as a sanction for the state's failure to produce two taped interviews with Chastine. The tapes in question were made on two separate occasions when Chastine was interviewed by Investigator Hildreth. The first interview took place at Fire Marshall Sullivan's office in Fairbanks. The interview was conducted in the presence of Fire Marshall Sullivan and Robert Timlin, a private fire investigator. The tape of this interview was apparently retained by Fire Marshall Sullivan. Investigator Hildreth received a rough draft transcript which was prepared by the fire marshall's secretary. Upon his return to Anchorage, Investigator Hildreth used this rough draft to prepare his report. At the trial, however, the state was unable to produce either the tape or the rough draft transcript. The second interview took place in Dalton, Georgia. Investigator Hildreth returned to Anchorage with the tape, had a transcript prepared, and placed the tape in his desk drawer. That tape was later erased and reused. Consequently, neither of the two recordings could be produced at trial.[12]

---

**10.** In such instances, the question would seem to be whether a proper foundation for the character testimony had been established. This question has not been raised either before the trial court or on appeal and, as such, will not be considered.

**11.** Putnam cites a number of other instances of alleged prosecutorial misconduct in support of his contention that the grand jury was subjected to impermissible influence. Inasmuch as none of these additional arguments were raised below we will not consider them on appeal. *Anthony v. State*, 521 P.2d 486, 496 (Alaska 1974); *Taggard v. State*, 500 P.2d 238, 243 (Alaska 1972).

**12.** In an attempt to more fully explain the circumstances surrounding the loss and destruction of the tapes the state has supplemented the record on appeal with several affidavits that were not presented to the trial court. We have elected not to consider this evidence. To choose otherwise would be to impermissibly invade the province of the trial court. *See Libby v. City of Dillingham*, 612 P.2d 33, 34, n.1 (Alaska, 1980).

█ In a criminal case, the state is under an obligation to make available to the defense evidentiary material which must be disclosed under the due process safeguards of *Brady v. Maryland*,[13] 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the requirements of Alaska Criminal Rule 16[14] or Alaska's so-called Little Jencks Act, AS 12.-45.060.[15] Where the state is unable to meet this obligation, serious questions arise concerning what, if any, sanctions are appropriate.

█ The state's failure to comply with these disclosure requirements, due to its loss or destruction of the evidence in question, does not automatically trigger the imposition of sanctions. Rather, the trial court must carefully examine the circumstances surrounding the state's violation of its duty of preservation.[16] What, if any, sanctions are appropriate is to be determined by weighing the degree of culpability involved on the part of the state, the importance of the evidence which has been lost, and the evidence of guilt which is adduced at trial. *See United States v. Rippy*, 606 F.2d 1150, 1154 (D.C.1979); *United States v. Peters*, 587 F.2d 1267, 1275–76 (D.C.1978); *United States v. Bryant*, 439 F.2d 642, 653 (D.C.1971). Where the evidence in question was destroyed in bad faith or as part of a deliberate attempt to avoid production, sanctions will normally follow. *United States v. Hilton*, 521 F.2d 164, 166 (2nd Cir. 1975), *cert. denied*, 425 U.S. 939, 96 S.Ct. 1674, 48 L.Ed.2d 181 (1976); *United States v. Bryant*, 439 F.2d at 651. On the other hand, where it appears that the evidence was lost or destroyed in good faith, the imposition of sanctions will depend upon the degree to which the defendant has been prejudiced.[17] In cases where the defendant cannot reasonably be said to have been prejudiced by the state's good faith failure to preserve the evidence, sanctions will generally not be appropriate. *See Wright v. State*, 501 P.2d 1360, 1371 (Alaska 1972). Where, however, the defendant has suffered prejudice, sanctions will generally be

13. *Brady* imposed on the state a due process obligation to disclose evidence favorable to the defendant. However, not every failure to disclose favorable evidence rises to a constitutional level. Rather, "a constitutionally unfair trial takes place only where the barriers and safeguards are so relaxed or forgotten ... that the proceeding is more a spectacle ... or trial by ordeal ... than a disciplined contest." *United States v. Augenblick*, 393 U.S. 348, 356, 89 S.Ct. 528, 533, 21 L.Ed.2d 537, 545 (1969) (citations omitted). Putnam does not contend on appeal that the State's failure to produce the tapes reduced his trial to a mockery. As such, constitutional scrutiny is neither required nor appropriate. We will therefore limit our review to the evidentiary issues presented by Criminal Rule 16 and AS 12.45.060.

14. Alaska Criminal Rule 16(b) requires the state to disclose to the defendant:

(i) The names and addresses of persons known by the government to have knowledge of relevant facts and their written or recorded statements or summaries of statements;

(ii) Any written or recorded statements and summaries of statements and the substance of any oral statements made by the accused.

15. AS 12.45.060 provides:

*Discovery after direct examination of witness.* After a witness called by the state has testified to direct examination, the court shall, on motion of the defendant, order the state to produce any statement of the witness in the possession of the state which relates to the subject matter as to which the witness has testified. If the entire contents of the statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

This statute was modeled after the Federal Jencks Act, 18 U.S.C. § 3500. Therefore, when faced with questions requiring the interpretation of the statute we have turned to federal case law for instruction. *See Wright v. State*, 501 P.2d 1360, 1370–71 (Alaska 1972).

16. The duty of preservation is the state's duty to preserve any evidence which is discoverable by the defendant. This duty attaches once any arm of the state has first gathered and taken possession of the evidence in question. *United States v. Bryant*, 439 F.2d 642, 651 (D.C.1971).

17. That evidence was deliberately not preserved in good faith as a result of ignorance or as part of a department policy, established practice, or anything of this nature will not automatically excuse the state's breach of its duty. The mere fact of good faith does not make the state's breach any less a violation of Criminal Rule 16 or the Jencks Act. *See United States v. Carrasco*, 537 F.2d 372, 376 (9th Cir. 1976).

warranted.[18] Just what sanction is appropriate in a given case is best left to the sound discretion of the trial court. *United States v. Peters*, 587 F.2d at 1275.

In the case at bar, the state's failure to produce the tapes clearly violated both Criminal Rule 16 and AS 12.45.060.[19] The question thus becomes what, if any, sanctions are appropriate. Our first point of inquiry is the state's culpability in the loss or destruction of the tapes. A review of the record, however, discloses that the circumstances surrounding the handling of the tapes was covered only superficially before the trial court. Investigator Hildreth was the only witness questioned on this point. He testified that he had no idea of the whereabouts of the first tape other than a general belief that it was in the possession of the state. As to the tape of the second interview, his testimony was merely that after he had placed the tape in his desk drawer it had been erased and used again. No other information was elicited. Investigator Hildreth's vague testimony does not provide an adequate foundation for any decision concerning the culpability of the state. The case must therefore be remanded. Further testimony from Investigator Hildreth and the other individuals who handled the tapes should clarify the degree of culpability involved. After hearing this additional testimony and reviewing the record as a whole, the superior court should weigh the culpability of the state against any prejudice suffered by Putnam and come to a determination as to what, if any, sanctions should be imposed.

We turn next to the state's cross-appeal. Following Putnam's conviction by a jury on all three of the offenses charges in the indictment, the trial court suspended the imposition of sentence for five years and placed Putnam on probation, on the special conditions that he serve 90 days in the Fairbanks Correctional Center and pay $170,801.00 in restitution.[20] The state contends that this sentence was too lenient. Our decision to remand the case on other grounds has made it technically unnecessary for us to reach this point. However, we recognize that if the case is not reversed on remand it will be necessary to reach this issue. Therefore, in order to avoid the necessity of a second appeal, we have decided to address this issue.

The state's appeal of a sentence which it feels is too lenient is authorized by statute. AS 12.55.120(b).[21] Our authority

---

**18.** In applying this rule, the heavy burdens of establishing that the failure to preserve the evidence occurred in good faith and not out of a desire to suppress evidence and of demonstrating that the defendant has suffered no resulting prejudice rest squarely on the shoulders of the state. *United States v. Bufalino*, 576 F.2d 446, 449 (2d Cir. 1978); *United States v. Bryant*, 439 F.2d at 651. Moreover, the difficulties involved in speculating whether or not the lost or destroyed materials could have been utilized effectively at trial mandate that the harmless error doctrine be strictly applied in these cases. *Goldberg v. United States*, 425 U.S. 94, 111 n.21, 96 S.Ct. 1338, 1348 n.21, 47 L.Ed.2d 603, 618 n.21 (1976).

**19.** The State maintains that Criminal Rule 16 supercedes Alaska's Jencks Act, AS 12.45.-050–.080. We do not agree. Criminal Rule 16 governs pre-trial discovery while the Jencks Act governs discovery during trial. Although the same evidence may be discoverable under both the rule and the statute, they are not so overlapping as to be inconsistent. *See United States v. Nobles*, 422 U.S. 225, 234–36, 95 S.Ct.

2160, 2168–2169, 45 L.Ed.2d 141, 141–52 (1975).

**20.** Inasmuch as the sentence imposes a term of imprisonment as a special condition of probation it is contrary to our holding in *Boyne v. State*, 586 P.2d 1250 (Alaska 1978). However, since neither the state nor the defendant has appealed on this ground we will not consider it in reviewing the sentence. Additionally, we take note of the legislature's recent provision allowing imprisonment to be imposed as a condition of a suspended imposition of sentence. AS 12.55.086.

**21.** AS 12.55.120(b) provides:

A sentence of imprisonment lawfully imposed by the superior court may be appealed to the supreme court by the state on the ground that the sentence is too lenient; however, when a sentence is appealed by the state and the defendant has not appealed the sentence, the court is not authorized to increase the sentence but may express its approval or disapproval of the sentence and its reasons in a written opinion.

in such instances, however, is limited to expressing our approval or disapproval; we are not authorized to increase the sentence. *Id.; State v. Lancaster*, 550 P.2d 1257, 1258 (Alaska 1976). In sentence appeals, whether brought by the state or the defendant, we will disapprove of a particular sentence only when we are convinced that the trial judge was clearly mistaken in imposing it. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974); *State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970).

In the case at bar, the trial judge's primary motivation appears to have been his desire to compensate those who had suffered a loss due to Putnam's crimes. Although we share this concern for the victims of Putnam's criminal acts, we believe the trial judge was clearly mistaken in imposing a sentence that did not include a more substantial term of imprisonment.

▆▆▆ The type of arson presented in this case is perhaps the most serious crime against property. It shows a gross indifference towards the lives of both the other occupants of the building and the firefighters called to battle the blaze. Fortunately, this fire did not result in any injuries and the remaining occupants were able to escape from the building unscathed. It must be recognized, however, that the lack of injury was merely good fortune and not due to any precaution taken by the perpetrator of the crime. Moreover, unlike many serious crimes which occur on the spur of the moment, as a result of uncontrolled emotions, arson, committed with the intent to defraud, is a calculated act. When sentencing an individual for such a crime the objectives of deterring others and reaffirming community condemnation deserve special consideration. We believe that for these objectives to be adequately served a more substantial period of incarceration should have been imposed.

▆▆▆ The sentence imposed is expressly disapproved of as being too lenient.[22]

REMANDED.

22. Despite our disapproval of Putnam's sentence, that sentence cannot be increased in the event of a new trial. *Shagloak v. State*, 597 P.2d 142 (Alaska 1979).

RABINOWITZ, Chief Justice, concurring in part, dissenting in part.

I am in agreement with the court's disposition of the grand jury and cross-appeal issues in the case at bar. In regard to the appropriate resolution of the question which pertains to the state's failure to preserve the tapes, I would remand the case solely for the purpose of requiring the superior court to make the determination of what sanctions should be imposed against the state. As the court notes, the mere fact that the state's failure to preserve the evidence in question resulted from good faith action, or inaction, does not render the state's breach any less a violation of Criminal Rule 16 or AS 12.45.050–080.[1] In other words, prosecutorial bad faith is a sufficient, but not a necessary, factor for the imposition of sanctions. If substantial prejudice occurred, then sanctions will generally be warranted regardless of prosecutorial culpability.

Here the court finds a violation of Criminal Rule 16 and AS 12.45.060, and, although the record may be inadequate for assessment of the state's culpability, I think we are able to adequately assess the prejudice to appellant Putnam. The tapes were of two interviews between the state's two key witnesses—Investigator Hildreth and witness Toby Chastine. The defense turned, to a large extent, on the theory that the prosecution's case was principally a combination of an overzealous investigator and a dishonest witness, testifying under the threat of criminal charges if his testimony did not implicate appellant. In his final argument, counsel for Putnam argued, in part:

That's circumstances to show Chastine is lying. He's a thief. He's an embezzler. He works for a company; he takes over a company, and he subverts their contracts and works for the King 8 Inn. And he takes the money he earns from

1. *See ante* at 43 & n.17.

the King 8 Inn which should go to Putman Services and pays back Putnam Services for the money he stole from him. Mr. Chastine, the bought witness, the immunized witness. Mr. Chastine's got a good deal; he's got a great deal.

The experts, Mr. Hildreth have discussed this testimony. He's not going to say it wasn't arson. He's going to say, I believe beyond a reasonable doubt it was arson. He said, even though I'm not an electrical expert, even though I—we didn't get an electrical expert to rule out electrical fires—he told you he ruled them out.... He didn't want any electrical experts, because he doesn't know what he's talking about. He came up here two months after the fire, doesn't know what happened at the fire; can guess, conjecture, and speculate; and he's not going to change his opinion, because he's going to get—by God, he's going to get Wayne Putnam; ...

Mr. Chastine is a thief and a liar. And, as I said before, he's the one that got—you know, he said, oh, gee, members of the jury—he said, I would have testified without an agreement; I'm a good guy; I'm doing my duty. It's easy to say when there's an agreement signed saying, we're not going to prosecute you. Easy to say, oh, I don't need this agreement. Well, why was there an agreement? Why? You know, what he is going to be prosecuted for —for telling what stories is he is going to be prosecuted for? He's going to be prosecuted for telling the story that doesn't agree with what Mr. Hildreth and Mr. Michalski want—feel is the correct thing in this case. He's got to say one thing; he's trapped into it.

In view of the foregoing and this defense theory, it is clear that the tapes of the two interviews between Hildreth and Chastine, at which Chastine admittedly gave two almost completely inconsistent statements, would have been absolutely crucial to the defense. Given the "heavy burden" of demonstrating that Putnam has suffered no resulting prejudice and the strict application of the harmless error rule in these cases,[2] I would conclude that Putnam sustained substantial prejudice as a consequence of the state's loss of the tapes.[3]

2. *See ante* at 44 n.18.

3. Since I think the specification of sanctions is best left to the sound discretion of the trial judge in the first instance, I do not regard an extended discussion of the available sanctions, or the principles guiding their selection, as appropriate at this point. *See* AS 12.45.080; Alaska R.Crim.P. 16(e); *United States v. Quiovers,* 539 F.2d 744, 746–48 (D.C. Cir. 1976); *United States v. Bundy,* 472 F.2d 1266, 1269 (D.C. Cir. 1972) (Leventhal, J., concurring); *United States v. Perry,* 471 F.2d 1057, 1062–64 (D.C. Cir. 1972); *United States v. Bryant,* 439 F.2d 642, 652–53 (D.C. Cir.), *appeal after remand,* 448 F.2d 1182 (D.C. Cir. 1971). *Cf. People v. Zamora,* 28 Cal.3d 88, 167 Cal.Rptr. 573, 615 P.2d 1361, 28 Crim.L.Rep. 2029 (Cal., Aug. 28, 1980); Uniform Rules of Criminal Procedure 421(e), 422(c).