Abdulkarim ABDULBAQUI, Appellant,

v.

STATE of Alaska, Appellee.

Trent L. CHAPIN, Appellant,

v.

STATE of Alaska, Appellee.

Nos. A–1297, A–1379.

Court of Appeals of Alaska.

Dec. 5, 1986.

James M. Hackett, Fairbanks, for appellant Abdulkarim Abdulbaqui.

Robert M. Beconvich, Fairbanks, for appellant Trent L. Chapin.

John A. Scukanec, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before COATS and SINGLETON, JJ., and MATTHEWS, Supreme Court Justice.*

## OPINION

MATTHEWS, Justice.

This is a consolidated appeal of convictions and sentences of two co-defendants, Abdulkarim Abdulbaqui and Trent L. Chapin. Abdulbaqui and Chapin were tried together in a joint jury trial and were both found guilty of first-degree robbery. The convictions related to the April 27, 1985 robbery of the D & H Liquor Store near Fairbanks, Alaska.

### FACTS

Angela Kirchner was working as a clerk at the D & H Liquor Store on the night of April 27, 1985, when two men wearing ski masks entered the store. One of the men, a white man, approached the counter, point-ed a gun at Kirchner, and told her to open the cash register. Kirchner pulled the drawer out and set it on the counter, and the man with the gun took the money out of the drawer. While this was happening, the other man, a black man, was standing by the door. After taking the money, the man with the gun told Kirchner to get on the floor, which she did, and the two men left.

After the two men left, Kirchner called her boyfriend, Jimmy Zirger, who lived nearby, and the state troopers. Zirger quickly armed himself, obtained a general description of the robbers, and left in pursuit of them. Zirger apprehended two men, Abdulkarim Abdulbaqui, who is black, and Trent Chapin, who is white, down the road from the liquor store. Zirger took a gun from the white man and noted that the men had ski masks. While herding the men back to the liquor store, Zirger met the state troopers and turned the men over to them. The troopers brought the two men back to the liquor store so that Kirchner could identify them, but she was unable to.

When Abdulbaqui and Chapin were searched, $97 was found in Chapin's coat pocket and a loaded .22 pistol was found in Abdulbaqui's pant leg. It was estimated that $96.85 was stolen from the liquor store. Chapin subsequently admitted to a trooper that he had committed the robbery. It was also found that footprints outside the liquor store matched the patterns on Chapin's and Abdulbaqui's shoes.

During the trial, Abdulbaqui did not testify; thus he did not deny his presence at the robbery scene. His attorney argued that he was an observer rather than a participant in the crime. Chapin's defense was in the nature of a general denial.

## DISCUSSION

### (A) ABDULBAQUI'S POINTS ON APPEAL

Abdulbaqui initially argues that the court erred in not granting Abdulbaqui's

---

* Sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

Motion For Judgment of Acquittal because fair-minded persons would have to agree that the state failed to prove beyond a reasonable doubt that Abdulbaqui aided in the armed robbery or that Abdulbaqui had the requisite criminal intent. A motion for judgment of acquittal must be denied unless fair-minded jurors would necessarily agree that the state had failed to carry its burden of proof beyond a reasonable doubt. *Dorman v. State,* 622 P.2d 448, 453 (Alaska 1981); *Brown v. State,* 693 P.2d 324, 328 (Alaska App. 1984). The superior court, in determining the question, and the court of appeals, on review, must view the evidence and all inferences therefrom in the light most favorable to the state. *Dorman v. State,* 622 P.2d at 453; *Maloney v. State,* 667 P.2d 1258, 1267 (Alaska App. 1983).

■ The evidence showed that Abdulbaqui entered the liquor store, wearing a ski mask, with Chapin, who was also wearing a ski mask. It was springtime and the temperature was relatively warm. Abdulbaqui stayed at the door while Chapin threatened Kirchner with a gun and demanded and obtained money from Kirchner. Abdulbaqui and Chapin subsequently left together. As the state notes, reasonable jurors could have inferred that Abdulbaqui was acting as a lookout. Abdulbaqui did not come to Kirchner's aid and, in fact, could have come to Chapin's aid or prevented others from intervening to aid Kirchner had Kirchner attempted to resist. Thus, because fair-minded jurors would not necessarily have found that the state had failed to carry its burden of proof beyond a reasonable doubt, the motion for acquittal was properly denied.

■ Abdulbaqui next argues that the court erred in not granting Abdulbaqui's request for an instruction on second-degree robbery. For determining whether a lesser-included offense instruction should be given, Alaska has adopted the cognate approach. *Elisovsky v. State,* 592 P.2d 1221, 1226 (Alaska 1979). Under the cognate approach, a lesser-included offense instruction is required if a two-part test is met: (1) it must be impossible to commit the greater offense without committing the lesser; and

(2) the greater offense must require the jury to find a disputed fact that is not required for conviction of the lesser-included offense. *Minano v. State,* 690 P.2d 28, 31 (Alaska App. 1984), *reversed on other grounds,* 710 P.2d 1013, 1016 (Alaska 1985); *Wilson v. State,* 670 P.2d 1149, 1151 (Alaska App. 1983).

In the present case, Abdulbaqui was charged with first-degree robbery and requested an instruction for second-degree robbery as a lesser-included offense. AS 11.41.500(a) outlines the elements of first-degree robbery:

A person commits the crime of robbery in the first degree if the person violates AS 11.41.510 and, in the course of violating that section or in immediate flight thereafter, that person or another participant

(1) is armed with a deadly weapon or represents by words or other conduct that either that person or another participant is so armed;

(2) uses or attempts to use a dangerous instrument or represents by words or other conduct that either that person or another participant is armed with a dangerous instrument; or

(3) causes or attempts to cause serious physical injury to any person.

AS 11.41.510(a) outlines the elements for second-degree robbery:

A person commits the crime of robbery in the second degree if, in the course of taking or attempting to take property from the immediate presence and control of another, the person uses or threatens the immediate use of force upon any person with intent to

(1) prevent or overcome resistance to the taking of the property or the retention of the property after taking; or

(2) compel any person to deliver the property or engage in other conduct which might aid in the taking of the property.

■ The first part of the cognate approach test is met here: it is impossible to commit first-degree robbery without also committing second-degree robbery because

AS 11.41.500(a) defines first-degree robbery to require a violation of AS 11.41.510, second-degree robbery. The second test is not met, however. Were it a disputed fact that a deadly weapon was used, second-degree robbery would properly be a lesser-included offense, and the court would have been required to give a lesser-included offense instruction. The fact that a deadly weapon was used is not disputed, however. Judge Greene refused to give the instruction on this basis.

As the state notes, since the presence of the weapon was undisputed, the only issue was whether Abdulbaqui participated in the robbery. The jury had to convict Abdulbaqui of first-degree robbery if it found that he had participated, or had to find him innocent of all wrongdoing if it found that Abdulbaqui had not participated.

The Alaska Supreme Court has previously considered the question in a factually analogous situation in *Rice v. State*, 589 P.2d 419 (Alaska 1979). In *Rice*, the defendant, who was charged with first-degree robbery, requested an instruction on second-degree robbery as a lesser-included offense. While it was undisputed that a firearm was used in the robbery, Rice asserted that a second-degree robbery instruction should be given because Rice's partner in the robbery was the only one to have control over the gun. The court rejected that contention on the basis that Alaska had abolished the common law distinction between accessories and principals to a crime. 589 P.2d at 420.

The analysis and conclusion of *Rice* are applicable to the present case. Abdulbaqui's contention that he should have been given an instruction on second-degree robbery as a lesser-included offense because he himself was not brandishing the weapon must be rejected.

Abdulbaqui next argues that the sentencing court erred in denying two of his requested mitigating factors pursuant to AS 12.55.155(d)(2) (the defendant, although an accomplice, played only a minor role in the commission of the offense), and AS 12.55.155(d)(9) (the conduct constituting the offense was among the least serious conduct included in the definition of the offense). Abdulbaqui asserts that the two mitigating factors apply because, during the robbery, Abdulbaqui merely wore a ski mask and stood passively in the store while Chapin robbed Kirchner.

■ Judge Greene found by clear and convincing evidence that Abdulbaqui was present at the robbery as a lookout, based on his position near the door, and was a principal of the offense. On this basis, she rejected Abdulbaqui's assertion that he was only an accomplice who played only a minor role in the commission of the crime. The record supports the inference that Abdulbaqui acted as a lookout for the robbery. We think that Judge Greene did not err in concluding on the facts of this case that the role of lookout should not be considered a more minor role than the role of the actual robber. The lookout serves to facilitate the crime by warning of the approach of others and by being ready to aid the person who is actually taking the money by either getting the money or by subduing the victim.

■ Judge Greene also found that Abdulbaqui had failed to prove by clear and convincing evidence that the conduct constituting the offense was among the least serious conduct. Judge Greene found that, considering the totality of the circumstances, the conduct constituting the offense was within the mid-range of armed robbery behavior. Based on these facts, we think Judge Greene's conclusion was not erroneous. Therefore, we hold that Judge Greene was not clearly erroneous in rejecting Abdulbaqui's mitigating factors. *See Juneby v. State*, 641 P.2d 823, 834 (Alaska App. 1982), *aff'd in relevant part on rehearing*, 665 P.2d 30 (Alaska App. 1983).

Abdulbaqui next argues that, even if Abdulbaqui had possessed a gun during the robbery, because Abdulbaqui did not himself display a weapon during the robbery, the court erred in finding the aggravating factor that Abdulbaqui had employed a dangerous instrument in furtherance of the offense. Judge Greene found, in aggravation of his offense, that Abdulbaqui had

employed a dangerous instrument in furtherance of the offense. AS 12.55.155(c)(4). She found this aggravating factor in spite of the fact that Abdulbaqui had not personally displayed a weapon during the robbery itself, because a gun was later found on Abdulbaqui's person, and Judge Greene believed by clear and convincing evidence that Abdulbaqui had possessed it while inside. The state concedes that AS 12.55.-155(c)(4) does not apply in the present case but argues that, though found in error, the error was harmless because the judge gave little weight to the factor. The court must independently analyze an issue, even when the state concedes a legal point. *Marks v. State*, 496 P.2d 66, 67 (Alaska 1972).

█ Mere possession of a dangerous instrument does not satisfy the requirements of AS 12.55.155(c)(4). *Linn v. State*, 658 P.2d 150, 153–54 (Alaska App. 1983) (use of an ax merely to gain entry and not to threaten people did not constitute employment of a dangerous instrument in furtherance of the offense). Thus, Judge Greene was clearly erroneous in finding the aggravating factor. *See Juneby v. State*, 641 P.2d at 834. Because Judge Greene did improperly find the aggravating factor based on possession of the gun, it appears that the state's concession is well-founded.

█ While the state argues that Judge Greene did not give much weight to the fact that Abdulbaqui possessed the gun, it is clear she gave some weight to it, and it is clear that this factor and another aggravating factor found because Abdulbaqui committed the robbery while on probation constituted the basis for the additional suspended three-year sentence:

The two aggravating factors that I found, I think I would be remiss if I didn't increase the sentence to some extent because of those. ... I think that when one commits a crime, another serious crime while on probation, it is a lot more serious. I think it speaks very poorly of rehabilitation potential. I think that in your case, Mr. Abdulbaqui I need to balance that against what you proved to me while you were out on your own recognizance, pretrial. In balancing that and considering the other *Chaney* crite-

ria, I don't believe that I should adjust the period of actual time in custody. I think that it's sufficient to increase the sentence and suspend that period of time based on that aggravating factor. With respect to the dangerous instrument that was employed, I also take into account the fact that that loaded .22 pistol was never displayed to anyone. I take into account the fact that at least at the point that it was discovered on your person, it was basically in a spot where it couldn't be used. I suspect that you'd had it in a usable point—place sometime before you started running. It's the only thing that makes sense. You certainly could have had that gun out and intimidated people in the robbery though. No question in my mind you could have done that. You didn't. I think you deserve some credit for that. So despite the fact that I think there needs to be an increase in the sentence, I don't think there needs to be an increase in the time that you spent in jail as a result of that aggravating factor.

Thus, we find it necessary to vacate the suspended three-year sentence and remand to the sentencing court to resentence based only on the other aggravating factor found by Judge Greene, AS 12.55.155(c)(20) (the defendant was on probation for another felony conviction).

█ Abdulbaqui finally contends that the sentencing court erred in not finding extraordinary circumstances and in not referring his case to a three-judge panel. Abdulbaqui's assertions of extraordinary circumstances were based on his financial responsibilities (Abdulbaqui owed $24,000 in medical bills and was responsible for the support of his elderly mother and two children) and on his strict compliance with the terms of the court's order allowing release on his own personal recognizance before trial. If a defendant is subject to presumptive sentencing and if the sentencing court finds by clear and convincing evidence that manifest injustice would result from failure to consider relevant aggravating or mitigating factors not specifically included in AS 12.55.155 or from imposition of the pre-

sumptive term, the court shall make findings and conclusions and refer the case to a three-judge panel. AS 12.55.165. A sentencing judge must consider the *Chaney* sentencing criteria in determining the existence of manifest injustice. *Lloyd v. State*, 672 P.2d 152, 155 n. 3 (Alaska App. 1983). *See State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970). Manifest injustice is a subjective standard and, on review, the court of appeals will consider the totality of the circumstances in determining whether the sentencing court erred in not referring the case to a three-judge panel. *Lloyd v. State*, 672 P.2d at 154, 156.

■ Judge Greene found that Abdulbaqui was a second felony offender convicted of a class A felony and was subject to a presumptive sentence of ten years under AS 12.55.125(c)(3). Judge Greene considered and rejected Abdulbaqui's request for a three-judge panel after considering the *Chaney* factors. She did not find Abdulbaqui's circumstances to be extraordinary. We agree. As the state notes, Abdulbaqui did not contend that he was compelled by his financial circumstances to commit the robbery to provide for his family. Considering the totality of the circumstances, it does not appear that the sentencing court erred in not finding extraordinary circumstances.

## (B) CHAPIN'S POINTS ON APPEAL

Chapin initially argues that the trial court erred in failing to dismiss the indictment for the failure of the state to preserve the dispatch tape of the call made by Kirchner to the police. Prior to trial, Chapin sought disclosure of the dispatch tape recording of Kirchner's call to the troopers reporting the robbery. Upon learning that the tape containing Kirchner's call had been erased and reused, Chapin moved to dismiss the indictment based on the state's failure to preserve the dispatch tape.

At the hearing on the motion, testimony established that the dispatch tape containing the call had been reused on the same day that Chapin's attorney had sent the request. Judge Greene found that the state had violated its obligation to disclose but concluded that no sanctions were re-quired because the tape had been preserved for a reasonable period of time, because Chapin had not been prejudiced, and because the tape's content would have been cumulative. Judge Greene therefore denied the motion to dismiss.

■ In a criminal case, the state has a duty to preserve any evidence which is discoverable by the defendant. This duty attaches once any arm of the state has first gathered and taken possession of the evidence in question. *Putnam v. State*, 629 P.2d 35, 43 n. 16 (Alaska 1980).

■ The state is under an obligation to make available to the defense evidentiary material that must be disclosed under the due process requirements established in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the requirements of Alaska Rule of Criminal Procedure 16, or Alaska Statute 12.45.060. *Putnam v. State*, 629 P.2d at 43. *Brady* requires the state to disclose evidence favorable to the defendant. 373 U.S. at 87, 83 S.Ct. at 1196–97, 10 L.Ed.2d at 218. Alaska Rule of Criminal Procedure 16(b)(1)(i) requires the state to disclose to the defendant:

(i) The names and addresses of persons known by the government to have knowledge of relevant facts and their written or recorded statements or summaries of statements.

AS 12.45.060 provides:

After a witness called by the state has testified to direct examination, the court shall, on motion of the defendant, order the state to produce any statement of the witness in the possession of the state which relates to the subject matter as to which the witness has testified. If the entire contents of the statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for examination and use.

■ The state's failure to comply with these disclosure requirements, due to the loss or destruction of the evidence in question, does not automatically require the im-

position of sanctions. Rather, the trial court must carefully examine the circumstances surrounding the state's violation of its duty of preservation. What, if any, sanctions are appropriate is to be determined by weighing the degree of culpability involved on the part of the state, the importance of the evidence that has been lost, and the evidence of guilt that is adduced at trial. *Putnam v. State*, 629 P.2d at 43.

 Where the evidence in question was destroyed in bad faith or as part of a deliberate attempt to avoid production, sanctions will follow. On the other hand, where it appears that the evidence was lost or destroyed in good faith, the imposition of sanctions will depend on the degree to which the defendant has been prejudiced. In cases where the defendant cannot reasonably be said to have been prejudiced by the state's good faith failure to preserve the evidence, sanctions will not generally be appropriate. Where the defendant has suffered prejudice, however, sanctions will generally be warranted. What sanction is appropriate in a given case is left to the sound discretion of the trial court. *Id.* at 43–44.

 In applying this rule, the state has the burden of establishing that the failure to preserve the evidence occurred in good faith, and not out of a desire to suppress evidence, and of demonstrating that the defendant has suffered no resulting prejudice. *Id.* at 44 n. 18. Further, because of the difficulty involved in speculating whether or not the lost or destroyed materials could have been used effectively at trial, the harmless error doctrine will be strictly applied in these cases. *Id.*

 Assuming without deciding that the state has a duty to preserve police dispatch tapes, we find that the state has met its burden of establishing that the destruction of the tape was done in good faith. Further, we find that the state has demonstrated that the defendant was not prejudiced by the tape's destruction.

Chapin alleges that Kirchner's initial description of the robbers was uncertain and did not match Abdulbaqui and Chapin.

This charge is belied by the testimony of Zirger. Zirger testified that Kirchner told him that one of the robbers was white and the other was black and that she had described their clothing, including the ski masks.

The present case is like *Hines v. State*, 703 P.2d 1175 (Alaska App.1985). In *Hines*, the state failed to retain notes of an interview with a state's witness, whose testimony, the defendant asserted, was contrived and had changed since the initial interview. This court rejected the defendant's argument because he had failed to show that the material allegedly destroyed would have affected the outcome of the case. 703 P.2d at 1179–80. *See also Williams v. State*, 629 P.2d 54, 63–64 (Alaska 1981) (where the court concluded that erasure of a tape did not result in a violation of due process because the tape would merely have been cumulative of other evidence at trial and would not have led the jury to entertain a reasonable doubt about the defendant's guilt).

Thus, even had the tape been preserved it would have been cumulative of other evidence and not particularly favorable to the defendant. It would not have created a reasonable doubt about the defendant's guilt, so the trial court did not abuse its discretion in refusing to sanction the state by dismissing the indictment.

Chapin next contends that the defendants' trials should have been severed because the defense of each defendant was inconsistent and antagonistic with the other. During the trial, Chapin's counsel moved to sever on the grounds of prejudicial joinder, but Judge Greene denied the motion.

 Alaska Rule of Criminal Procedure 8(b) provides, in pertinent part:

Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction ... constituting an offense or offenses.

Alaska Rule of Criminal Procedure 14 provides, in pertinent part:

If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants, or provide whatever other relief justice requires.

A trial court's decision to deny severance can be overturned only for abuse of discretion, *Maynard v. State*, 652 P.2d 489, 491 (Alaska App. 1982), and only where there has been a showing of prejudice. *Montes v. State*, 669 P.2d 961, 966 (Alaska App. 1983).

 Antagonistic defenses do not ordinarily require severance. *Middleton v. State*, 577 P.2d 1050, 1053 (Alaska 1978). However, where the defenses are irreconcilable, that is, mutually exclusive to the extent that one must be disbelieved if the other is to be believed, severance should be granted. *United States v. Bovain*, 708 F.2d 606, 610 (11th Cir.), *cert. denied*, 464 U.S. 898, 104 S.Ct. 251, 78 L.Ed.2d 238 (1983); *United States v. Mota*, 598 F.2d 995, 1001 (5th Cir.1979), *cert. denied*, 444 U.S. 1084, 100 S.Ct. 1042, 62 L.Ed.2d 770 (1980); *State v. Lawson*, 144 Ariz. 547, 698 P.2d 1266, 1276 (1985). In the present case, neither defendant testified. Chapin's defense was in the nature of a general denial, whereas Abdulbaqui's defense was that although he was present in the liquor store while it was robbed, he did not participate in the robbery. The only witness called by Abdulbaqui was a trooper who testified that Abdulbaqui did not own the guns which had been found on Abdulbaqui and Chapin. At final argument, counsel for Abdulbaqui maintained neutrality as to whether Chapin was the robber. Thus, the defenses presented, though different, were not irreconcilable.[1] The trial court did not abuse its discretion in refusing to grant Chapin's motion to sever.

Chapin's final argument is that imposition of sentence under both AS 11.41.500 and AS 12.55.125(c)(2) violates the requirement of due process (right to jury trial) and the prohibition against double jeopardy. Chapin was sentenced for first-degree robbery, a class A felony, AS 11.41.500(b), which includes as an element being armed with a deadly weapon, AS 11.41.500(a)(1), or using or attempting to use a dangerous instrument. AS 11.41.500(a)(2). Chapin's sentence was also enhanced pursuant to AS 12.55.125(c)(2), which states:

(c) A defendant convicted of a class A felony may be sentenced to a definite term of imprisonment of not more than 20 years, and shall be sentenced to the following presumptive terms, subject to adjustment as provided in AS 12.55.155—12.55.175: ...

(2) if the offense is a first felony conviction, other than for manslaughter, *and the defendant possessed a firearm, used a dangerous instrument,* or caused serious physical injury during the commission of the offense, or knowingly directed the conduct constituting the offense at a uniformed or otherwise clearly identified peace officer, fire fighter, correctional officer, emergency medical technician, paramedic, ambulance attendant, or other emergency responder who was engaged in the performance of official duties at the time of the offense, seven years....

(Emphasis added). Chapin objects to the fact that both the crime and the enhancement statute include as an element the use of a deadly weapon.

 As the state notes and Chapin concedes, the issue of whether imposition of sentence under both AS 11.41.500 and AS 12.55.125(c)(2) violates the prohibition against double jeopardy was considered in *Burks v. State*, 706 P.2d 1190 (Alaska App. 1985). In *Burks*, the defendant was con-

---

1. *See United States v. Mota*, 598 F.2d 995, 1001 (5th Cir.1979), *cert. denied*, 444 U.S. 1084, 100 S.Ct. 1042, 62 L.Ed.2d 770 (1980) (Mota entered a general denial to charges relating to sale of cocaine and Flores entered an insanity plea; counsel for Flores acknowledged in argument that the government's evidence as to Flores would probably support the prosecutor's allegations as to what had taken place; held defenses not irreconcilable—Flores introduced no testimony that implicated Mota).

victed of first-degree robbery and the trial court enhanced the defendant's sentence pursuant to AS 12.55.125(c)(2). The defendant appealed, asserting that use of the enhancement statute in conjunction with a crime that required use of a deadly weapon as an element violated the prohibition against double jeopardy. This court rejected that argument, finding that the enhanced presumptive terms operate independently of the elements of the underlying offenses. *Burks* thus forecloses Chapin's double jeopardy argument. *Id.* at 1192.

 Chapin next argues that the use of a dangerous instrument element in AS 12.-55.125(c)(2) must be found by a jury before it can be used to enhance a sentence. He cites *State v. Wedge*, 293 Or. 598, 652 P.2d 773, 778 (1982), which held that the question of whether a defendant used a firearm during the commission of a crime should be decided by a jury. This argument is foreclosed by both fact and law. Here, because the jury had to find that a dangerous instrument or deadly weapon was used in order to convict Chapin of AS 11.41.500, Chapin has been given his jury finding on the issue. Such a finding is not required by Alaska law, however. In *Huf v. State*, 675 P.2d 268 (Alaska App. 1984), the defendant was convicted of first-degree sexual assault and first-degree burglary and was sentenced under the enhancement statute for possessing or using a firearm. The defendant requested that the question be decided by a jury. This court held that the question was a question for the court, not the jury. *Id.* at 271. Thus, *Huf* forecloses Chapin's right to jury trial argument.

## CONCLUSION

We AFFIRM both Abdulbaqui's and Chapin's convictions. We also AFFIRM Chapin's sentence. However, we VACATE and REMAND Abdulbaqui's sentence for further proceedings consistent with this opinion.

BRYNER, C.J., not participating.