**STATE of Alaska, Petitioner,**

v.

**Raymond L. NORMAN, Respondent.**

No. A–4466.

Court of Appeals of Alaska.

June 10, 1994.

Cynthia L. Herren, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage,

and Charles E. Cole, Atty. Gen., Juneau, for petitioner.

David B. Koch, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for respondent.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

MANNHEIMER, Judge.

A Kenai grand jury indicted Raymond L. Norman for fourth-degree misconduct involving a controlled substance (possession of more than one ounce of marijuana with intent to distribute), AS 11.71.040(a)(2). Shortly before Norman's arrest, state troopers executed a search warrant for Norman's home. The police found and seized 140 marijuana plants, marijuana growing equipment (such as lights, potting soil, and fertilizer), and $3400 in $100 bills.

Because the State believed that the $3400 in currency was the fruit of drug sales, the State took the money to a bank, exchanged the currency for a cashier's check, then turned the cashier's check over to officials of the United States government for forfeiture under 21 U.S.C. § 881(h). Before doing this, the State photocopied the bottom half of the face of each bill (so that the serial number of the bill was displayed), apparently intending to use these photocopies at Norman's trial as substitutes for the actual currency.

Norman filed a pre-trial motion seeking return of the thirty-four $100 bills; he claimed that the physical bills themselves had evidentiary value. The State responded that any request for inspection or return of the money should be addressed to the federal government, the current custodian of the $100 bills.

■ Upon receiving the State's response, Norman asked the superior court to hold the State in contempt for violating its duty as bailee of the currency. As Norman correctly pointed out, when the police execute a search warrant, any property they seize is seized under the authority of the court. The police become custodians of this property as agents of the court; they are not at liberty to dispose of it unless they first obtain the court's permission. *Johnson v. Johnson*, 849 P.2d 1361 (Alaska 1993).

Norman told the superior court that he had earned the $3400, not through drug sales, but through working as a painter and a fisherman. He argued that the bills themselves might bear flecks of paint or fish scales that would corroborate his explanation of the source of this money. The State responded that the presence of paint or fish scales on the currency would not necessarily support Norman's explanation of the money (since he might have sold marijuana to painters and fishermen).

Superior Court Judge Jonathan H. Link ruled that the State had violated its fiduciary duty by relinquishing custody of the bills and dispersing them so that they could not be recovered. Because it was impossible to tell what evidence might have been on the bills when they left the State's possession, Judge Link concluded that the appropriate remedy was to dismiss the case against Norman with prejudice.

The State petitioned this Court to review the superior court's decision. We now reverse the superior court and reinstate the prosecution against Norman.

■ The superior court correctly found that the State had violated its fiduciary duty by relinquishing custody of the thirty-four $100 bills. *Johnson, supra.* However, even if we assume that the currency would have borne fish scales, paint flecks, or other evidence that Norman came by this money legitimately, the superior court abused its discretion when it ordered the case dismissed on account of the State's breach of duty.

■ When the government engages in misconduct that affects a criminal prosecution, the defendant's remedy is generally limited to curing whatever prejudice has been caused by the government's misconduct. Thus, for example, when the government has obtained evidence by unlawful means, a criminal defendant is entitled to suppression of the evidence but not dismissal of the charges. *Green v. State*, 857 P.2d 1197, 1201 (Alaska App.1993).

■ Courts have adopted a stricter rule to govern cases in which the government has intentionally destroyed or failed to preserve evidence known to be material to the defendant's case. Even though it may not be possible to accurately gauge the extent of the prejudice to the defendant's case, the defendant is entitled to dismissal of the charges if the missing evidence could possibly have created a reasonable doubt concerning the defendant's guilt. *See Maloney v. State,* 667 P.2d 1258, 1263 (Alaska App.1983). However, when the government has destroyed evidence through negligence, a less stringent rule is used: a court should not dismiss the charges against the defendant unless it affirmatively appears that the lost evidence would have created a reasonable doubt concerning the defendant's guilt. *Abdulbaqui v. State,* 728 P.2d 1211, 1218 (Alaska App.1986).

Norman's case appears to present a situation somewhere in between intentional and negligent destruction of evidence. State agents had seized the currency from Norman, and they clearly suspected that the currency was evidence relevant to the prosecution against him. Despite this awareness, the government exchanged the $100 bills for a cashier's check, placing the currency into the flow of interstate banking commerce, allowing it to be scattered and irretrievably dispersed. On the other hand, the government photocopied each bill before they relinquished it, apparently attempting to preserve a record of what had been seized. Judge Link found that the State had acted unreasonably when it relinquished physical custody of the currency, but he also found that the State had not intentionally tried to prejudice Norman's defense.

We need not decide whether the State's action should be characterized as "intentional" or "negligent" destruction of evidence because we find that, even under the stricter test employed in cases of intentional destruction, the dispersed currency could not have created a reasonable doubt concerning Norman's guilt.

Norman claims that he has been harmed because his possession of thirty-four $100 bills might be construed as evidence that he was engaged in drug trafficking, and because he has been deprived of the physical evidence that might have been found on the bills themselves (evidence such as paint flecks or fish scales) that would explain the origin of these $100 bills and show that he had earned the money in legitimate endeavors. The State responds that Norman has not been prejudiced because the presence of paint flecks and fish scales on the bills might prove only the identity of Norman's customers, not the manner in which he earned the money. This, however, is not an answer to Norman's contention; the significance of the paint flecks and fish scales would be a matter for the jury to decide. We therefore agree that Norman was prejudiced if there is a possibility that the $100 bills bore the physical evidence he suggests.

However, this prejudice does not support the superior court's decision to dismiss the charge against Norman. Even assuming that the $100 bills bore the paint flecks and fish scales that Norman suggests, the State's scattering of this evidence deprived Norman of only one thing: a fair opportunity to explain his possession of nearly three dozen $100 bills. The paint and fish scales would be of no discernible help to Norman in explaining the 140 marijuana plants and growing equipment found at his residence. Thus, even though the State wrongfully prevented Norman from physically testing the currency for paint and fish scales, favorable results from this testing would not lead a jury to entertain a reasonable doubt concerning Norman's guilt to the extent its verdict was based on the remaining evidence. Compare the analogous facts presented in *Catlett v. State,* 585 P.2d 553, 556–58 (Alaska 1978), and *Torres v. State,* 519 P.2d 788, 793–97 (Alaska 1974).

Thus, any remedy for the State's dispersal of the currency must be limited to measures that redress Norman's loss of ability to explain the presence of the currency. One possible remedy would be suppression of the currency—preventing the State from presenting evidence that thirty-four $100 bills were found in Norman's residence. Another possible remedy would be to give the jury a "destruction of evidence" instruction. This was the remedy ordered by the supreme

court in *Thorne v. Department of Public Safety,* 774 P.2d 1326, 1331–32 (Alaska 1989), when the government erased the videotape of a DWI suspect's sobriety tests.

The choice of a proper remedy, given the circumstances, is entrusted to the trial judge's discretion. *Putnam v. State,* 629 P.2d 35, 43–44 (Alaska 1980); *Abdulbaqui,* 728 P.2d at 1218. We therefore leave it to the superior court to decide which of these two suggested remedies, or any other, is appropriate in this case. However, under the circumstances presented here, the superior court abused its discretion when it ordered dismissal of the charges against Norman.

The decision of the superior court is REVERSED. The charge against Norman is reinstated, and this case is remanded to the superior court for further proceedings on the indictment.