**Roy Erwin McDOLE, Appellant,**

v.

**STATE of Alaska, Appellee.**

Nos. A–8743.

Court of Appeals of Alaska.

Sept. 30, 2005.

David D. Reineke, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for the Appellant.

John A. Scukanec, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

STEWART, Judge.

Roy Erwin McDole unlawfully claimed unemployment benefits for two years. A jury convicted McDole of thirty-one counts of unsworn falsification and one count of second-degree theft.[1] The State charged only one theft count by aggregating all the periodic payments McDole received through the two-year course of misconduct.[2] McDole illegally obtained a total sum in excess of $10,000.

McDole had been unconditionally discharged from a prior felony conviction in 1991. The statutory ten-year period during which this prior felony would make McDole a second felony offender for presumptive sentencing expired during the two-year period of his theft.[3] Because McDole's series of thefts already constituted felony theft before the ten-year period expired, we agree with the superior court that McDole was properly sentenced as a second felony offender.

McDole also argues that the superior court found a statutory aggravating factor without submitting the issue to a jury in violation of *Blakely v. Washington*.[4] But we conclude that the failure to submit the aggravating factor to a jury was harmless. Accordingly, we affirm McDole's sentence.

### Background facts

The State alleged that McDole wrongfully obtained unemployment benefits by falsely claiming eligibility for the benefits over a two-year period. The State aggregated all the unlawfully obtained benefits in one count of second-degree theft. The State also filed an information that charged thirty-five counts of unsworn falsification for each time McDole applied for benefits and falsely reported his eligibility. The time period alleged in the indictment was June 6, 2000, through June 24, 2002. The jury convicted McDole of second-degree theft and thirty-one of the thirty-five counts of unsworn falsification.

Before sentencing, the parties filed briefs addressing the question of whether McDole should be sentenced as a first felony offender or a second felony offender. The parties agreed that McDole had one prior felony. But under AS 12.55.145(a)(1)(A), a prior felony ceases to count for sentencing purposes when ten years have passed since the defendant's unconditional discharge from state supervision on that felony. McDole was unconditionally discharged from his prior felony on October 16, 1991. Thus, the date for deter-

---

**1.** AS 11.56.210 and AS 11.46.130(a)(1), respectively.

**2.** AS 11.46.980(c).

**3.** AS 12.55.145(a)(1)(A).

**4.** 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

mining McDole's status as a first or second felony offender was October 15, 2001, the day on which the ten-year statutory period expired. The State argued that McDole should be sentenced as a second felony offender because his series of thefts began in June 2000, well before the October 2001 cut-off date. For his part, McDole noted that the State charged his series of thefts as one aggregated count of theft. McDole argued that, because he was charged with one aggregated theft spanning two years, his offense was not complete until June 24, 2002, the date of his last theft of unemployment benefits. McDole thus argued that he should be treated as a first felony offender, because his current offense was not complete until eight months after the October 2001 cut-off date for his prior felony.

The State also claimed that two statutory aggravating factors applied to McDole's presumptive term: that McDole's conduct was among the most serious included in the definition of the offense; and that McDole had a history of similar criminal conduct.[5] McDole contested the most serious conduct aggravator, but conceded that he had a history of similar criminal conduct.

At sentencing in January 2004, Superior Court Judge Larry D. Card ruled that McDole was subject to a presumptive 2–year term as a second felony offender. Judge Card rejected the most serious conduct aggravator, and accepted the uncontested history of similar conduct aggravator.

Judge Card aggravated McDole's presumptive term by imposing suspended imprisonment. McDole received a 4–year term with 2 years suspended for second-degree theft. Judge Card merged the unsworn falsification counts and imposed a 1–year term concurrent with the theft sentence.

On appeal, McDole renews his argument that he was not subject to presumptive sentencing. In addition, McDole argues that the superior court violated *Blakely*, which was decided after McDole's sentencing, by not submitting the uncontested aggravator to a jury.

*Discussion*

■ Alaska Statute 12.55.145(a)(1)(A) provides that "a prior conviction may not be considered if a period of 10 or more years has elapsed between the date of the defendant's unconditional discharge on the immediately preceding offense and commission of the present offense unless the prior conviction was for an unclassified or class A felony."

McDole was unconditionally discharged from his prior felony conviction on October 16, 1991. As a result, he would be classified as a second felony offender for presumptive sentencing for a felony committed on or before October 15, 2001. McDole's conviction for second-degree theft was based on the aggregation of McDole's individual acts of misconduct that occurred from June 6, 2000, through June 24, 2002.

McDole argues that his crime should be deemed "committed" when the last act of misconduct was complete on June 24, 2002. He notes that he was charged with theft in the second degree based on AS 11.46.980(c), which states that the degree of a property crime is determined by the aggregation of the dollar amount of "criminal acts committed under one course of conduct." He further argues that another criminal statute, AS 12.10.030(a), specifies that a crime involving a "course of conduct" is committed "when the course of conduct or the defendant's complicity therein is terminated."

McDole misreads AS 12.10.030(a), which addresses time limitations for commencing prosecution and provides in full:

An offense is committed either when every element occurs, or, *if a legislative purpose to prohibit a continuing course of conduct plainly appears,* at the time when the course of conduct or the defendant's complicity therein is terminated. Time starts to run on the day after the offense is committed.[6]

Under this statute, a crime is committed when each element is met "unless it 'plainly appears' that the legislature intended to de-

---

**5.** AS 12.55.155(c)(10) and (c)(21), respectively.

**6.** Emphasis added.

fine the offense as a continuing course of conduct."[7] And this court has previously held that theft is not a continuing offense, but is complete as soon as the thief appropriates the property of another.[8] In addition, the aggregation statute does not define theft but is used to determine the degree of the theft that may be charged with aggregation.

McDole committed theft each time he improperly received unemployment benefits, in two-week intervals, starting in June 2000. By October 15, 2001, McDole had stolen over $8000, well above the $500 threshold for felony theft.[9]

■ Nonetheless, McDole argues that the phrase "commission of the present offense" in AS 12.55.145(a)(1)(A) is ambiguous as to when a crime is committed, and that this court should rule in his favor under the "rule of lenity." It is well established that ambiguities in criminal statutes should be read narrowly and strictly construed against the State.[10] It is also true that neither the statute nor its legislative history offer guidance as to the meaning of the phrase "commission of the present offense."

■ While "criminal statutes generally must be construed in favor of the accused, a court is nevertheless obliged to avoid construing statutes in a way that leads to patently absurd results or to defeat of the obvious legislative purpose behind the statute."[11] McDole's conduct supported a charge of second-degree theft well before ten years had lapsed since his previous felony conviction. If we accepted McDole's construction of the statute, he would be entitled to a more lenient sentence based on the fact that he continued to steal for several months after the ten-year statutory period expired. We

conclude that the legislature did not intend this anomalous result.

We need not decide whether a defendant in McDole's situation should be treated as a second felony offender whenever the defendant's new offense *commences* within the ten-year statutory period following an unconditional discharge from the prior felony. To resolve McDole's appeal, it is sufficient to note that McDole's series of thefts met the monetary requirement for felony theft long before the ten-year period expired. We hold that in these circumstances, the superior court properly sentenced McDole as a second felony offender.

■ We now turn to McDole's contention that the superior court's finding of the aggravating factor violated *Blakely*. *Blakely* stands on a principle that the Supreme Court recently repeated in *United States v. Booker*:[12] "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."[13] The defendant has a right to demand a jury trial on an aggravating fact, and the State must prove the fact beyond a reasonable doubt.[14] If the defendant is denied this right, then the sentencing judge cannot exceed the prescribed statutory ceiling.[15]

We have ruled that Alaska's pre–2005 presumptive sentencing laws are directly affected by the *Blakely* decision because under those laws, sentencing judges ruled on aggravators and applied a clear and convincing evidence standard of proof.[16] Under *Blake-*

---

7. *Saathoff v. State*, 991 P.2d 1280, 1282 (Alaska App.1999), *aff'd*, 29 P.3d 236 (Alaska 2001).

8. *Woodward v. State*, 855 P.2d 423, 428 n. 14 (Alaska App.1993).

9. *See* AS 11.46.130(a)(1).

10. *See, e.g., State v. Mullin*, 778 P.2d 233, 236 (Alaska App.1989).

11. *State v. Lowrence*, 858 P.2d 635, 638 (Alaska App.1993).

12. 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

13. *Booker*, 543 U.S. at ——, 125 S.Ct. at 756.

14. *Blakely*, 542 U.S. at ——, 124 S.Ct. at 2537–38, 2542.

15. *See id.* at 2538.

16. *Haag v. State*, 117 P.3d 775, 782 (Alaska App. 2005).

*ly*, aspects of the pre–2005 presumptive sentencing laws violated the Sixth Amendment.[17]

McDole faced a 2–year presumptive term for second-degree theft. Based on statutory aggravating factor AS 12.55.155(c)(21) (McDole had a history of criminal conduct similar in nature to the present offense), Judge Card added an additional 2 years of suspended imprisonment. McDole conceded the history of similar criminal conduct aggravator at trial. Nevertheless, *Blakely* applies retroactively to cases pending on direct review.[18] Because McDole did not object to the sentencing procedure at trial, he must now show plain error.[19]

McDole's theft conviction stemmed from the unemployment benefits he wrongfully received by falsely claiming eligibility. The State offered evidence that McDole had a history of similar criminal conduct to prove that McDole had made similar misrepresentations on two other occasions in applying for Alaska unemployment insurance. The presentence report indicated that on both occasions, McDole received an overpayment due to misrepresentation and was subsequently denied benefits. The report also stated that when McDole applied for benefits in 2000, the initial payments were applied to the outstanding debt from his last overpayment. McDole was not convicted of any crime for these two incidents of misrepresentation.

At trial, McDole did not attack these facts, and conceded the aggravator without comment. In this appeal, McDole still does not attack the factual basis of the aggravator. He does not argue that the misrepresentations did not occur, or that the prior incidents of misrepresentation and overpayment were not similar to the current acts of misrepresentation and overpayment. McDole merely objects to the procedures followed by the sentencing judge, asserting that under

*Blakely*, the State was required to prove the aggravator to a jury beyond a reasonable doubt.

Recently, we faced the question of whether a trial court's finding of an aggravating factor constituted plain error. In *Haag v. State*,[20] we concluded that the question of whether a victim was particularly vulnerable under statutory aggravating factor AS 12.55.155(c)(5) required the finder of fact to assess the extent of the victim's physical incapacity and his ability to resist a robbery in comparison with a typical robbery victim.[21] Because those assessments turn on matters of degree, we ruled that the identity of the fact finder and the burden of proof could have affected the outcome, and that the sentencing judge's resolution of the aggravator using the clear and convincing standard of proof constituted plain error.[22] In contrast, in *Milligrock v. State*,[23] the superior court found aggravating factor AS 12.55.155(c)(18)(A), that the defendant committed the offense against a person residing in the same household as the defendant.[24] Because the evidence that the defendant lived with the victim was undisputed, we ruled that there was no reasonable possibility that a jury would have ruled in the defendant's favor on the issue.[25] As a result, we held that the procedural error regarding the aggravator did not amount to plain error.[26]

The issue in this case is closer to the issue in *Milligrock* than to the issue in *Haag*. The record contains undisputed evidence that McDole has a history of criminal conduct similar to the current offense. McDole does not contend that the history is inaccurate, or that the previous incidents are not similar to the current offense. The question of whether prior acts of misrepresentation and the resulting overpayments occurred is not a question of degree. Given the undisputed

**17.** *Id.* at 783.

**18.** *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987).

**19.** *See Haag*, 117 P.3d at 783.

**20.** 117 P.3d 775 (Alaska App.2005).

**21.** *Haag*, 117 P.3d at 785.

**22.** *Id.*

**23.** 118 P.3d 11 (Alaska App.2005).

**24.** *Id.* at 14.

**25.** *Id.* at 16.

**26.** *Id.*

evidence in the record, we conclude that there is no reasonable possibility that a jury would find in McDole's favor on this issue. Therefore, the procedural error with respect to aggravator (c)(21) does not amount to plain error.

Finally, as the State points out, the jury convicted McDole of thirty-one counts of unsworn falsification. At sentencing, Judge Card confirmed that McDole had been convicted of thirty-one counts, but the written judgment does not reflect the jury's acquittal on count thirty-four. We direct the superior court to correct this clerical error.

*Conclusion*

We affirm McDole's sentence with the exception that we direct the superior court to amend the judgment to correct the clerical error we discussed above.