William C. SAMPLES, Appellant,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

No. A–9719.

Court of Appeals of Alaska.

June 29, 2007.

---

968

William C. Samples, pro se, for the Appellant.

Amy K. Doogan, Assistant Municipal Prosecutor, and James N. Reeves, Municipal Attorney, Anchorage, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

### OPINION

COATS, Chief Judge.

William C. Samples was charged with speeding. He requested a jury trial, but District Court Magistrate Brian Johnson denied the request. After a bench trial, Magistrate Johnson found Samples guilty of speeding.

On appeal, Samples argues that Magistrate Johnson erred in finding that he was not entitled to a jury trial. However, a speeding ticket is generally not a criminal proceeding

where the accused has a right to a jury trial, and Samples has not shown that he was at risk of losing his driver's license. Therefore, Magistrate Johnson did not err in denying Samples's motion for a jury trial.

Samples also argues that Magistrate Johnson erred in failing to review the documents he brought to court, failing to ordering a hearing on whether laser speed readings are admissible as scientific evidence, failing to find that he was caught in an illegal speed trap, and failing to require the Municipality to prove its case beyond a reasonable doubt. Samples did not preserve these issues for appeal, and none qualifies as plain error.

Finally, Samples argues that there was insufficient evidence for Magistrate Johnson to find that he was speeding. But, a police officer testified that he visually observed Samples's car, a 1993 Ford Mustang convertible with the top down, traveling at approximately 85 miles per hour. The officer also testified that his laser speedmeter showed the car was traveling at 88 miles per hour and that the applicable speed limit was 65 miles per hour. Because there was sufficient evidence for Magistrate Johnson to find that Samples was speeding, we affirm Samples's conviction.

### Facts and proceedings

On July 13, 2006, at approximately 3:39 p.m., Anchorage Police Officer Richard J. Dykstra II was parked on the side of the Glenn highway near Mirror Lake and observed a convertible pass his location at approximately 85 miles per hour. The posted speed limit was 65 miles per hour. Officer Dykstra activated his Light Detection and Ranging (LIDAR) laser speedmeter, which showed that the car was traveling at 88 miles per hour. He stopped the car and charged the driver, Samples, with speeding.[1]

Samples requested a jury trial, but Magistrate Johnson told him he was not entitled to a jury trial in a traffic case. At trial, Samples cross-examined Officer Dykstra on various technical aspects of the LIDAR laser and its proper use, including the use of tripods to steady the instrument; the use of multiple

officers so that the laser speedmeter can be used to monitor traffic traveling away from the instrument; cosine, sine, and tangent errors; atmospheric conditions; errors caused by sweeping the laser across different points of the car; and other possible problems. But Samples did not elicit any evidence as to how these aspects of the laser and its use affected the reading in his case. Moreover, Officer Dykstra testified that the angle of the laser beam actually benefitted Samples, and that he was probably going closer to 91 miles per hour. Officer Dykstra also stated that his visual observation was more important than the laser reading; the laser simply corroborated his visual observation.

Magistrate Johnson summarized the case: Officer Dykstra testified that he visually observed the car going approximately 85 miles per hour, there was nothing to indicate that the laser was not functioning properly in this case, and the laser reading showed that Samples was going 88 miles per hour. He found Samples guilty of speeding.

### Discussion

*Magistrate Johnson did not err in denying Samples's request for a jury trial*

■ Samples argues that Magistrate Johnson erred in denying his request for a jury trial. The accused is entitled to a jury trial in all criminal prosecutions.[2] This includes all cases where the accused is charged with an offense that carries a potential penalty of: (1) imprisonment, (2) loss of a valuable license (including a driver's license), or (3) a fine so large as to connote criminality.[3]

■ However, the right to a jury trial does not extend to "such relatively innocuous offenses as wrongful parking of motor vehicles, minor traffic violations, and [regulatory] violations ... so long as incarceration is not one of the possible modes of punishment."[4] Trials involving traffic infractions are quasi-criminal proceedings.[5] As the Alaska Supreme Court has noted, "the term 'quasi-criminal' encompasses minor offenses which are criminal rather than civil in nature but do not meet the *Baker* test for the right to jury trial."[6]

Here, the fine for speeding twenty or more miles per hour over the designated speed limit is twelve dollars for each mile per hour over the limit.[7] Samples was driving twenty-three miles per hour over the speed limit and, therefore, faced a $276 fine. Samples did not face any potential of incarceration, and his fine of $276 is not heavy enough to be "taken as a gauge of the ethical and social judgments of the community," thereby requiring a jury trial.[8]

The more difficult issue is Samples's argument that he should be afforded a jury trial because his speeding conviction could result in the loss of his driver's license. As noted above, the accused has a right to a jury trial when charged with an offense that carries a potential penalty of the loss of a driver's license.[9] Under the Alaska Administrative Code, when a driver is convicted of speeding more than twenty miles over the posted speed limit, the Department of Motor Vehicles enters six points against the driver's driving record.[10] If the driver accumulates twelve or more points in a twelve-month period or eighteen or more points in a twen-

---

2. U.S. Const. amend. VI; Alaska Const. art. I, § 11; *Baker v. Fairbanks,* 471 P.2d 386, 401 (Alaska 1970).

3. *Alexander v. Anchorage,* 490 P.2d 910, 912–13 (Alaska 1971); *Baker,* 471 P.2d at 401–402; *State v. Auliye,* 57 P.3d 711, 714 (Alaska App.2002).

4. *Baker,* 471 P.2d at 402 (Alaska 1970).

5. *State v. Clayton,* 584 P.2d 1111, 1113 (Alaska 1978).

6. *State v. Dutch Harbor Seafoods, Ltd.,* 965 P.2d 738, 745 (Alaska 1998).

7. AMC 9.48.130.

8. *Baker,* 471 P.2d at 402 n. 29. *See also Dutch Harbor Seafoods,* 965 P.2d at 742 ($3000–$6000 fine does not connote criminality in context of highly regulated, multi-million dollar fishing industry); *State v. O'Neill Investigations, Inc.,* 609 P.2d 520, 538 (Alaska 1980) ($5000 civil fine for unfair or deceptive trade practices does not render proceedings criminal prosecutions).

9. *Alexander,* 490 P.2d at 913; *Baker,* 471 P.2d at 402 & n. 28; *Auliye,* 57 P.3d at 714.

10. 13 AAC 08.210.

ty-four month period, the driver's license is suspended or revoked.[11]

The Municipality notes that this type of license revocation occurs as part of an administrative proceeding, not as part of the sentence for speeding.[12] And it points to *Baker v. Fairbanks,*[13] where the Alaska Supreme Court held that the right to a jury trial does not extend to revocation of licenses pursuant to administrative proceedings "where lawful criteria other than criminality are a proper concern ... [and] the basis of revocation or suspension ... is ... that the individual is not fit to be licensed, apart from considerations of only guilt or innocence of crime." [14] However, Samples argues that, because the administrative code requires revocation of a driver's license based solely on guilt of certain crimes and not the other considerations mentioned in *Baker,* the right to a jury trial must apply to those underlying convictions.

Samples has not presented any evidence that his conviction directly resulted in the loss of his license or that he was even at risk of having his license suspended solely due to his speeding ticket. And, while it is possible that Samples will accumulate an additional six points within one year or twelve points within two years and, for that reason, have his license suspended or revoked, it is also possible that Samples will not commit future traffic offenses and the points assessed for the current conviction will not count toward a future license suspension or revocation. Because Samples's case does not raise this issue, we express no opinion on whether a motorist in this position would be entitled to a jury trial.

Samples was not charged with an offense that carried a potential penalty of imprisonment, loss of a valuable license, or a fine so large as to connote criminality. Accordingly, Magistrate Johnson did not err in denying Samples a jury trial on his speeding ticket.

*Magistrate Johnson did not commit plain error when he failed to review, sua sponte, the documents Samples brought to court*

■ Samples argues that Magistrate Johnson should have reviewed the manuals, drawings, and calculations regarding laser speed readings that Samples brought to court. However, Samples never asked Magistrate Johnson to review the documents. Accordingly, he must show plain error.[15]

Samples used the documents he brought to court to extensively cross-examine Officer Dykstra on the reliability and use of the LIDAR laser speedmeter. Because Samples used these documents solely for his examination and as his personal notes, Magistrate Johnson did not commit plain error in failing to ask Samples if he could review the documents.

■ And even if Magistrate Johnson erred in failing to review the documents, any error was harmless. Although Samples argued that there are potential problems with laser speedmeters in general, he did not show that any of the potential problems occurred in this case. Officer Dykstra testified that he checks the alignment of the laser before and after every shift; that any potential sine, cosine, and tangent errors would actually benefit Samples; that he does not sweep cars with the speedmeter; and that he holds the speedmeter up to his cheek, using his body as a human tripod. Magistrate Johnson found "there's just nothing here to indicate to me that the laser wasn't functioning appropriately."

11.  13 AAC 08.230.

12.  *See* 13 AAC 08.210;  13 AAC 08.230.

13.  471 P.2d 386.

14.  *Id.* at 402 n. 28. *See also Alaska Bd. of Fish and Game v. Loesche,* 537 P.2d 1122, 1125 (Alaska 1975) (holding that the right to a jury trial does not extend to administrative proceeding involving loss of a guiding license where fitness to practice that profession is the primary concern); *In Re Cornelius,* 520 P.2d 76, 83 (Alaska 1974), *abandoned on other grounds in Disciplinary Matter Involving Buckalew,* 731 P.2d 48 (Alaska 1986) (holding that the right to a jury trial does not apply to Bar disciplinary proceedings); *State v. District Court,* 927 P.2d 1295, 1296–97 (Alaska App.1996) (holding that minors charged with illegally consuming alcohol are entitled to a jury trial when loss of a driver's license is a required component of the sentence).

15.  *Wettanen v. Cowper,* 749 P.2d 362, 364 (Alaska 1988) (arguments not raised below are considered waived on appeal absent plain error).

*Magistrate Johnson did not commit plain error when he failed to order a hearing, sua sponte, on whether laser speed readings are admissible as scientific evidence*

■ Next, Samples argues that Magistrate Johnson erred in failing to order a hearing under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[16] to determine whether laser speed readings are admissible in court as scientific evidence.[17] However, Samples did not raise this issue at trial. Accordingly, again, he must show plain error.[18]

■ A plain error is an error that is "so obvious that any competent judge or attorney would have recognized it."[19] Many courts have recognized the general reliability of laser speed-detection devices and have deemed their results admissible in court.[20] Because many courts have found that readings from laser speedmeters are admissible, Magistrate Johnson's failure to hold a *Daubert* hearing on the admissibility of the laser speedmeter reading is not an error that is so obvious any competent judge would have recognized it. Magistrate Johnson therefore did not commit plain error.

*Magistrate Johnson did not commit plain error when he failed to find, sua sponte, that Samples had been subjected to an illegal "speed trap"*

■ Samples also argues that he was caught in an illegal speed trap. However, it appears that Samples explicitly waived this argument in the district court. At his trial, Samples noted that Alaska does not have a statute dealing with speed traps, and he asked the court whether the Alaska State Troopers have administrative oversight over speed traps. At this point, Magistrate Johnson asked Samples to clarify what he meant; the magistrate said, "I don't know what

you're talking about to be perfectly honest, sir." Samples responded, "All right, sir, I'll just let that go then." Samples never returned to this subject in the district court.

But even assuming that Samples is authorized to raise this speed trap issue on appeal as a claim of plain error, we find no plain error. Alaska law contains no definition of "speed trap," and Samples does not define what he means by this term.

Under California law, an unlawful "speed trap" is either (1) a stretch of state highway that has been pre-measured, and set with markers, so that the police can simply use a stopwatch to time the passage of vehicles through the zone and thereby determine their speed, or (2) a stretch of state highway where the normal speed limit has been lowered without justification—*i.e.*, lowered in the absence of a traffic engineering study whose results would justify lowering the speed limit at that point in the highway.[21]

The facts of Samples's case do not fit either of these definitions. Samples's speed was measured with a laser speedmeter. And Samples was not charged with violating an unexpectedly or unjustifiably low speed limit. Rather, he was charged with exceeding a posted speed limit of 65 miles per hour. We take judicial notice that this is the highest speed limit currently posted in this state.

In sum, Samples offers no definition of "speed trap" that would apply to the facts of his case. Samples is a motorist who was caught speeding by a law enforcement officer who was parked along a highway, using a laser to measure the speed of passing vehicles. There is nothing in either Alaska law or California law to suggest that this strategy of traffic enforcement constitutes an unlawful "speed trap." Accordingly, Magis-

---

**16.** 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

**17.** *Id.* at 592–94, 113 S.Ct. at 2796–97 (construing the federal rules governing expert testimony); *State v. Coon*, 974 P.2d 386, 389–99 (Alaska 1999) (adopting *Daubert* as the proper interpretation of Alaska's rules governing expert testimony).

**18.** *Wettanen*, 749 P.2d at 364.

**19.** *Simon v. State*, 121 P.3d 815, 820 (Alaska App.2005).

**20.** *See State v. Williamson*, —— P.3d ——, —— 2007 WL 1438128 at *2–3 (Idaho App. May 17, 2007) (collecting authorities from other states holding that laser speed detection devices are generally reliable and their results admissible in court).

**21.** Ann. Cal. Vehicle Code § 40802(a). *See also* Ann. Cal. Vehicle Code §§ 40803–40804.

trate Johnson did not commit plain error when he failed to *sua sponte* dismiss the charges against Samples on this basis.

*Magistrate Johnson did not apply an incorrect burden of proof*

 Samples argues that he was not afforded a presumption of innocence and that Magistrate Johnson did not require the Municipality to prove the offense beyond a reasonable doubt. The Alaska Supreme Court has held that criminal procedures, including the requirement of proof beyond a reasonable doubt, apply to quasi-criminal proceedings such as trials involving traffic infractions.[22]

Here, Magistrate Johnson did not explicitly state the applicable burden of proof. But he did not state or even imply that he was holding the Municipality to a lower burden than the burden of proof beyond a reasonable doubt. He simply stated that the question was whether Samples was speeding, and he found Samples guilty. We find no reason to believe that Magistrate Johnson held the Municipality to an incorrect burden of proof or failed to afford Samples the presumption of innocence.

*There was sufficient evidence for Magistrate Johnson to find Samples guilty of speeding*

Finally, Samples argues that Officer Dykstra's testimony was inconsistent and uncorroborated and, therefore, he should have been acquitted of speeding. However, Officer Dykstra testified that Samples was driving at approximately 85 miles per hour, that the laser speedmeter indicated that Samples was traveling at 88 miles per hour, and that the applicable speed limit was 65 miles per hour. This testimony was sufficient for Magistrate Johnson to find Samples guilty of speeding.

*Conclusion*

Samples's conviction is AFFIRMED.

---

22. *See Dutch Harbor Seafoods,* 965 P.2d at 745; *Clayton,* 584 P.2d at 1113–15.