**Timothy Wayne BRADLEY, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–9877.**

Court of Appeals of Alaska.

Nov. 28, 2008.

Rehearing Denied Dec. 15, 2008.

**28.** *Reeves v. Alyeska Pipeline Serv. Co.,* 56 P.3d 660, 668 (Alaska 2002).

Doug Miller, Assistant Public Advocate, and Joshua Fink, Public Advocate, and Rachel Levitt, Acting Public Advocate, Anchorage, for the Appellant.

Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

STEWART, Judge.

Timothy Wayne Bradley appeals his conviction for felony driving while under the influence.[1] Bradley raises several claims of error. On appeal, he contends (1) that the superior court should have dismissed the

---

1. AS 28.35.030(n).

driving while under the influence charge, or at least suppressed evidence of the breath test, because police lost the audio recording of the field sobriety tests and the Datamaster processing; (2) that in light of the "loss or destruction of evidence" instruction given in this case, there was insufficient evidence to support the conviction; (3) that the superior court erred by refusing to consider the possibility of granting Bradley co-counsel status; (4) that the superior court erred when, at the start of jury selection for the first phase of a bifurcated trial, it inadvertently informed the prospective jury panel that Bradley faced a charge of felony driving while under the influence; and (5) that the superior court erred when it ruled that Bradley had been previously convicted of driving while under the influence two or more times since January 1, 1996. For the reasons explained here, we reject Bradley's claims and affirm his conviction and his sentence.

*Background facts and proceedings*

On December 27, 2005, Anchorage Police Officer Troy Clark saw a vehicle driven by Bradley fail to stop at a stop sign. Clark followed the vehicle and watched Bradley turn without using his turn signal and then run two more stop signs. Clark stopped Bradley for these violations. When Clark contacted Bradley, he noticed that Bradley's eyes were red and watery, his speech was slurred, and there was a strong odor of alcohol emanating from his breath. Bradley was also swaying and unsteady on his feet. Bradley admitted that he had been drinking beer earlier.

Two other police officers, Jeff Whitworth, who was in training at the time, and his field training officer, Kevin Mitchell, had Bradley perform field sobriety tests. Bradley performed poorly on the three standardized field sobriety tests and Whitworth arrested him for driving while under the influence.

Whitworth and Mitchell transported Bradley to the Fourth Avenue police substation. While completing paperwork, Whitmore observed Bradley for the requisite fifteen-minute observation period. Whitmore then had Bradley provide a breath sample, and the DataMaster result was .110.

Whitmore had recorded the field sobriety tests and the DataMaster processing on a digital recorder issued by the Anchorage Police Department. At the end of his shift, Whitmore attempted to upload the digital recording onto the police department's computer server. Later, however, the recording could not be found on the server.

Bradley was charged with one count of felony driving while under the influence. He was also charged with two misdemeanors—driving with a suspended license and failing to maintain motor vehicle liability insurance.

Bradley filed a motion to suppress the breath test results, asserting that Whitmore was required to record the field sobriety tests and the DataMaster processing under *Stephan v. State.*[2] After an evidentiary hearing, Superior Court Judge John E. Suddock denied the motion, finding that the failure to record was inadvertent and that Bradley had failed to show how he was prejudiced by the lack of a recording. However, during Bradley's trial, the jury was instructed "to presume that the missing recorded evidence would have been favorable to [Bradley]."

Bradley also complained about the performance of the assistant public defenders appointed by the court to represent him. He requested that he be allowed to represent himself, or else be granted co-counsel status. At an ex parte representation hearing, Bradley's appointed counsel objected to Bradley's request, and also explained that, as a matter of policy, the Public Defender Agency would not agree to co-counsel or hybrid representation.

Based on counsel's position, Judge Suddock asked Bradley if he wanted to represent himself or continue with his appointed attorney. Judge Suddock pointed out that his current attorney had entered the case so recently that Bradley could "not have determined that she's incompetent." And, in fact, Bradley did not offer any evidence that the new attorney was incompetent; rather, he was unhappy with her because she would not allow a friend of his to act as part of the

**2.** 711 P.2d 1156 (Alaska 1985).

defense team, and because she was not yet familiar with Bradley's claim that he had a medical condition that prevented him from passing the field sobriety tests. But rather than continue with his appointed counsel, Bradley chose to represent himself.

Judge Suddock then advised Bradley on the advantages and disadvantages of proceeding without an attorney. When Bradley was asked if it was his decision to waive his right to an attorney, he said: "Yes, sir, it is." Judge Suddock then inquired about Bradley's ability to represent himself. Ultimately, he found that Bradley was capable of representing himself.

Approximately six weeks later, the State filed a motion to ensure that Judge Suddock had made an adequate record showing that Bradley had voluntarily and intelligently waived his right to counsel. Judge Suddock conducted another hearing. There, Bradley reminded Judge Suddock that he had already found that he was capable of representing himself. And when Judge Suddock asked Bradley if he wanted to continue representing himself, Bradley said: "Absolutely, Sir." When asked if he wanted standby counsel, Bradley said he wanted pro se status. When asked if he wanted his former attorney in an advisory capacity, Bradley answered, "Absolutely not." After this, Judge Suddock again advised Bradley on the advantages and disadvantages of proceeding without an attorney.

Soon after, the case proceeded to a jury trial. Before the State began its case, Bradley pleaded no contest to the misdemeanor charges. Superior Court Judge Larry D. Card presided over a bifurcated trial for the driving while under the influence charge. Ultimately, Bradley was found guilty of felony driving while under the influence.

This appeal followed.

*Why we find that Bradley has not shown that the superior court committed plain error when it refused to dismiss the DUI charge or to suppress the DataMaster test results*

█ Bradley moved to suppress evidence on the ground that the police had violated the rule established in *Stephan v. State*.[3] That is, he argued that evidence must be suppressed because the police failed to record the DUI processing done at the substation. He argued that a recording would show that the police failed to allow the fifteen-minute observation period before administering the test, that they ran more than one test, hit the machine between tests, and printed out the results that showed Bradley's breath alcohol content was .110 percent but rejected the results showing that his alcohol content was .00 percent.

Judge Suddock held an evidentiary hearing to resolve this motion. At the hearing, Anchorage Police Officers Jeff Whitworth and Kevin Mitchell testified that the cassette tape recorder in the substation was not working, so they recorded the processing on Whitworth's digital recording device. This model of digital recorder had been issued by the Anchorage Police Department to its police officers. At the end of Whitworth's shift, he attempted to upload the recorded information from the digital recorder to a server. Although Whitworth thought he had completed the upload successfully, he later discovered that the information never made it to the server. By the time this was discovered, the information was no longer available on his digital recorder. The parties entered into a stipulation that a search of the server showed that there was no indication that the upload had occurred.

Whitworth and Mitchell also testified that only one DataMaster test for Bradley was conducted that night and that its result was .110. Evidence at trial supported this testimony. A document introduced into evidence and testimony at trial showed all of the tests conducted on that DataMaster that day. This evidence showed that there was only one test of Bradley's breath. The evidence at trial also showed that the DataMaster was calibrated and was functioning properly when Bradley's breath was tested. In addition, the State's expert explained that if the police hit the DataMaster during the test

---

**3.** 711 P.2d 1156 (Alaska 1985).

with enough force to interrupt its operational capabilities, then it would stop working.

Bradley testified at the hearing. Although he said that the police left him "waiting and waiting for them to get [the testing] process started," he claimed that the police did not conduct the fifteen-minute observation period. He also said that the first DataMaster results showed that his breath alcohol content was .00 percent, but that one of the officers then "smacked [the instrument] twice" and the DataMaster result changed to .110 percent.

Judge Suddock noted that neither this court nor the Alaska Supreme Court has expanded the *Stephan* rule to encompass DUI processing. Rather than decide whether he should expand the rule, Judge Suddock instead ruled that even if *Stephan* did apply to DUI processing, the failure to save the recording was inadvertent. He also found that Bradley had not "presented credible evidence that the [loss of the audio recording] . . . made any difference to his ability to defend his case." Under *Stephan*, "an unexcused failure to electronically record a custodial interrogation conducted in a place of detention violates a suspect's right to due process, under the Alaska Constitution, and . . . any statement thus obtained is generally inadmissible." [4] But here, Judge Suddock found that Whitworth's failure to preserve the recording was excused, and that suppression under *Stephan* was not warranted. [5] On appeal, Bradley does not challenge this ruling.

Instead, Bradley makes a different claim— he contends that Judge Suddock, rather than relying on *Stephan*, should have relied on case law addressing the proper sanctions when the State loses or destroys evidence. Bradley now argues that Judge Suddock's decision was controlled by *Thorne v. Department of Public Safety*[6] and *Putnam v. State*.[7] But Bradley argued at the evidentiary hearing that suppression was the appropriate sanction for a *Stephan* violation. He never asked Judge Suddock to consider whether other sanctions were warranted under *Thorne* or *Putnam*. Accordingly, Bradley must show that Judge Suddock's failure to impose any other sanction was plain error.[8]

As part of his argument on appeal, Bradley takes issue with the sanction that was imposed. During trial, when the parties were discussing jury instructions, Bradley asked that the jury be "instructed to presume that the missing recorded evidence would have been favorable to the defendant." Judge Card agreed and instructed the jury that

> [t]here was a digital recording made during the field sobriety test, arrest and at the time of the alcohol testing at the police substation. The original and back-up recording was lost or destroyed. You are instructed to presume that the missing recorded evidence would have been favorable to the defendant.

This was the first and only time that this issue arose. To the extent that Bradley now contends that this sanction was inadequate, he again must show plain error.

"A plain error is an error that is 'so obvious that any competent judge or attorney would have recognized it.' " [9] The law is well-settled that "[w]hen the state destroys or loses evidence in its possession, the trial court is not automatically required to impose sanctions." [10] Instead, "the trial court must carefully examine the circumstances surrounding the state's violation of its duty of

---

**4.** 711 P.2d at 1158 (footnotes omitted).

**5.** *See id.* at 1162; *see also Suiter v. State,* 785 P.2d 28, 31 (Alaska App.1989) (declining to apply *Stephan* rule to the booking process where evidence showed that failure to record the proceedings was inadvertent rather than intentional).

**6.** 774 P.2d 1326 (Alaska 1989).

**7.** 629 P.2d 35 (Alaska 1980) *rejected on other grounds in Stephan,* 711 P.2d at 1163.

**8.** Alaska R.Crim. P. 47(b).

**9.** *Samples v. Anchorage,* 163 P.3d 967, 972 (Alaska App.2007) (quoting *Simon v. State,* 121 P.3d 815, 820 (Alaska App.2005)).

**10.** *State v. Ward,* 17 P.3d 87, 89 (Alaska App. 2001); *see Putnam,* 629 P.2d at 43; *Abdulbaqui v. State,* 728 P.2d 1211, 1217–18 (Alaska App. 1986).

preservation."[11] In particular, the trial court must consider the degree of culpability on the part of the State, the importance of the lost evidence, the prejudice suffered by the defendant, and the evidence of guilt adduced at the hearing or trial.[12]

In *Thorne,* the supreme court considered these factors and determined that the appropriate sanction for the State's premature destruction of a videotape of the defendant's field sobriety tests was to remand with directions to the administrative hearing officer to presume that the videotape would have been favorable to the defendant.[13] This type of sanction has been approved by the supreme court and this court.[14]

In light of Alaska case law and the circumstances in Bradley's case, Bradley has not shown that all competent judges would have concluded that the sanction Bradley requested was inadequate. We therefore conclude that neither Judge Suddock nor Judge Card committed plain error.

Bradley also claims that Judge Suddock, at the evidentiary hearing, disregarded the parties' stipulation that the information had never been on the server, nor did the server show that there had been any attempt to upload the information. But Judge Suddock's ruling did not reject or ignore the stipulation; Judge Suddock found that Whitworth may have incorrectly performed the uploading process. The stipulation did not prevent such a finding.

*Why we find that Judge Suddock did not abuse his discretion when he denied Bradley's request to act as co-counsel*

■ As already explained, prior to trial Bradley filed a motion asking that he be allowed to represent himself or, "preferably[,] obtain an Order ... allow[ing] ... Co–Counsel Status." Judge Suddock held an ex parte representation hearing. There, Brad-

ley's attorney told the judge that the Public Defender Agency was "not willing to accept co-counsel status with Mr. Bradley." She also claimed that it was the Public Defender's "policy to not accept such legal relationships" and that the agency "refuse[d] to get in[to] contractual relationships with someone in co-counsel status." For his part, Bradley again . asked that he be allowed to either represent himself or act as co-counsel.

Judge Suddock said that he would not give Bradley co-counsel status because his attorney, based on agency policy, was not willing to accept such an arrangement. He also found that Bradley did not provide sufficient reasons for terminating his current attorney and having another appointed. He told Bradley he had to either proceed with his appointed attorney or proceed pro se. Bradley chose to proceed pro se.

On appeal, Bradley contends that Judge Suddock abused his discretion by denying Bradley's request solely on the claim that the Public Defender Agency had a policy against accepting co-counsel status. Bradley argues that Judge Suddock made the same error that occurred in *Cano v. Anchorage.*[15] That is, he claims that Judge Suddock rejected the request for co-counsel status out of hand.

But Judge Suddock, unlike the judge in *Cano,* did not reject Bradley's request out of hand. Rather, Judge Suddock refused to give Bradley co-counsel status over his attorney's objection. And more importantly, as explained later in this opinion, Bradley rejected a second opportunity to have some sort of hybrid representation.

In *Cano,* the defendant and his appointed attorney were willing to proceed as co-counsel.[16] The trial court refused to even consider the request.[17] This court ruled that the trial court abused its discretion by its "outright refusal" to consider various alternatives

**11.** *Putnam,* 629 P.2d at 43.

**12.** *Ward,* 17 P.3d at 90; *Thorne,* 774 P.2d at 1331; *Putnam,* 629 P.2d at 44.

**13.** *Thorne,* 774 P.2d at 1331–32.

**14.** *Id.; Ward,* 17 P.3d at 90; *see also Snyder v. State,* 930 P.2d 1274, 1279–80 (Alaska 1996);

*State v. Norman,* 875 P.2d 775, 777–78 (Alaska App.1994).

**15.** 627 P.2d 660 (Alaska App.1981).

**16.** *Id.* at 661–62.

**17.** *Id.* at 662.

available to it.[18] This "amount[ed] to nothing more than a denial by the court of its own authority."[19] The defendant then decided to proceed pro se and eventually convinced the judge to allow appointed counsel to stand by in the courtroom; the appointed counsel was unable to participate in the trial, but was available for consultation during recesses.[20] This court reversed the conviction. In a concurring opinion, Judge Coats pointed out that this court's ruling "was very limited" and among other things did not address situations where counsel objected to co-counsel status.[21] Here, Judge Suddock clearly knew he had the authority to grant Bradley's request but refused to do so over the attorney's objection.

Bradley also contends that Judge Suddock erred when he accepted the Public Defender Agency's position that it would not act as co-counsel, but we do not need to address this issue. Even if we assume that the Public Defender lacks the authority to refuse to act as co-counsel absent a case-specific reason, the record shows that approximately six weeks after Judge Suddock made his initial ruling, he offered Bradley a second opportunity to have hybrid representation, to have counsel reappointed, or to again ask for co-counsel status. When Judge Suddock asked Bradley if he needed or wanted standby or advisory counsel, Bradley answered, "Absolutely not."

This second opportunity occurred approximately six weeks after the first representation hearing, when the State—out of an abundance of caution—asked Judge Suddock to ensure that Bradley was making a voluntary and knowing waiver of his right to counsel. The original representation hearing had been ex parte and the prosecutor was not present when Judge Suddock found that Bradley had made such a waiver. In response to the State's motion, Judge Suddock again discussed the issue with Bradley.

As the hearing began, Bradley reminded Judge Suddock that he had already granted him pro se status. He pointed out to the court that he was found "competent enough to do the [trial] on [his] own and . . . appreciate[d] that." The following dialogue then occurred:

> *Court:* "Okay, and you're happy and want to continue in that vein?"
>
> *Bradley:* "Yes, and if there's any objection from the State, . . . [it has had plenty of opportunity] to argue the point."
>
> *Court:* "So, you're not making any motion that you're having any difficulty or problem representing yourself . . . ?"
>
> *Bradley:* "Absolutely . . . ."
>
> *Court:* "[A]nd you want to continue as you are?"
>
> *Bradley:* "Absolutely, Sir."

A short time later, Bradley reminded Judge Suddock that he requested pro se status:

> *Bradley:* "[I]f the court remembers in my motion for the representation hearing, I did ask for pro se status or . . . ."
>
> *Court:* "Right. Would you like to have . . . [your former attorney] along just as an . . ."
>
> *Bradley:* "No, I do not."
>
> *Court:* ". . . advisory capacity?"
>
> *Bradley:* "Absolutely not."

By the time Bradley rejected the opportunity to have his former attorney reinstated in some capacity, he had been handling the litigation on his own for approximately six weeks. But rather than request hybrid representation or renew his request for co-counsel, he instead asked that the court allow him to have a non-attorney sit with him during trial to take notes and otherwise provide assistance. Judge Suddock granted this request, and Judge Card honored it at trial.

■ Even if Judge Suddock had originally erred by refusing to grant Bradley co-counsel status over Bradley's attorney's objection, the error was harmless—the record shows that when Judge Suddock revisited the issue, Bradley had the opportunity to ask for, and Judge Suddock was willing to consider, hy-

---

**18.** *Id.* at 664.

**19.** *Id.*

**20.** *Id.* at 662.

**21.** *Id.* at 665 (Coats, J., concurring).

brid representation. But Bradley had no interest in having an attorney assist him and he unequivocally chose to represent himself. (Bradley does not separately claim that his waiver of the right to assistance of counsel was invalid.)

*Why we find that Judge Card's inadvertant act of informing the prospective jurors that Bradley had been charged with felony DUI was harmless error*

■ Before a jury was selected, Judge Card read the charges to the prospective jurors. Judge Card told this panel that the State of Alaska has "charged Mr. Bradley with the following offenses ... Count I, felony driving under the influence-excuse me, driving under the influence." There was no objection, but Bradley now contends that telling the jury that this was a felony offense was reversible error. Because there was no objection, Bradley has to show plain error.

Here, after telling the jury that Bradley was charged with felony driving while under the influence, Judge Card immediately said, "excuse me, driving under the influence." Then after reading the other two counts against Bradley, Judge Card instructed the jury that:

> [T]hese charges are only a formal method of accusing a defendant of a crime. It's not evidence of any kind against the accused. It does not create any presumption or permit any inference of guilt. It's merely an allegation of the charges against the defendant and informs him as to the specific crimes that he is charged with. The fact that it was filed may not be considered by you for any purpose and is not evidence in the case and should not be considered as such by you.

He went on to explain to the jury that the State had the burden of proving beyond a reasonable doubt all of the material allegations and essential elements of the crime charged, and that Bradley was presumed innocent.

In addition, the instructions later given to the jury explained that the indictment was a "mere accusation," was not evidence of the

defendant's guilt, and the jury should not "be influenced to any extent, however slight, against the defendant" based on its having been filed. The jury was also instructed that the State had the burden of proving each and every element of the charges beyond a reasonable doubt, and that they were obligated to decide the case based upon the law and the evidence. This court ordinarily presumes that a jury follows the trial court's instructions.[22]

Bradley has not shown that these instructions were insufficient to cure any possible prejudice that arose from the fact that the jury heard he was charged with felony DUI. We conclude that no plain error occurred.

*Why we find that there was sufficient evidence to support Bradley's conviction for DUI*

■ Bradley claims that based on the "loss or destruction of evidence" jury instruction, there was insufficient evidence supporting the DUI verdict. That is, he contends that had the members of the jury followed this instruction and presumed that the lost or destroyed evidence was favorable to Bradley, they could not have found him guilty of driving while under the influence. But in this case, the jury could disregard the evidence surrounding the field sobriety tests and the DataMaster processing and still convict Bradley of driving while under the influence.

Bradley was charged under both the impairment theory and the .08 theory. The jury was instructed that it could convict Bradley under either theory. Even without the field sobriety tests and the DataMaster result, there was sufficient evidence to support Bradley's conviction under the "impairment" theory.

At trial, the jury heard Anchorage Police Officer Troy Clark testify that he watched Bradley slide past a stop sign, then turn without using his turn signal. When Clark tried to stop him, Bradley continued to drive, even though Clark had activated his vehicle's lights and siren. With Clark following him, Bradley drove through two more stop signs without stopping. He finally stopped when

---

**22.** *See Knix v. State,* 922 P.2d 913, 923 (Alaska App.1996).

he pulled into a trailer park. When Bradley got out of the vehicle he was driving, Clark saw that he was swaying and unsteady on his feet. Clark could smell a strong odor of alcohol coming from Bradley while still two to three feet away. And when Bradley spoke, his speech was slurred. Clark put Bradley in the back of his police vehicle and waited for Officer Whitworth to arrive to conduct a DUI investigation.

The jury heard Officer Whitworth testify that when he first contacted Bradley, he noticed "a very strong odor of alcohol coming from his breath and person." Bradley's speech was slurred, and he had bloodshot and watery eyes. Bradley admitted that he had been drinking.

The evidence was sufficient to support the jury's verdict that Bradley was guilty of DUI under AS 28.35.030(a)(1), the impairment theory.

> *Why we find that the State proved that Bradley had two prior qualifying DUI convictions*

Bradley's DUI trial was bifurcated. In the first phase, the jury found him guilty of driving while under the influence. In the second phase, Judge Card found that the State had proven that Bradley had the requisite prior DUI convictions and was guilty of felony DUI.

Bradley's current DUI offense occurred on December 27, 2005. Under AS 28.35.030(n), for his current offense to be a felony, he had to have been "previously convicted two or more times since January 1, 1996, and within the 10 years preceding the date of the present offense." Bradley asserts that it is not clear what the legislature meant by "previously convicted."

Bradley points out that one of the prior offenses the State relied upon was committed in September 1995. Although he entered a plea of no contest and was found guilty of that offense—a felony DUI—in December

1995, he was not sentenced until March 7, 1996. He asserts that the legislature intended that "previously convicted" meant the day the defendant was found guilty, not the day the defendant was sentenced.

He supports this assertion by pointing out that in the same statute the legislature recently created an alternate way to qualify for a felony DUI conviction; under this alternate theory, a person is guilty of felony DUI if that person has been previously punished for a prior felony. Under the current version of AS 28.35.030(n), a "person is guilty of a class C felony if the person is convicted under (a) of this section and either *has been previously convicted two or more times since January 1, 1996, and within the 10 years preceding the date of the present offense,* or *punishment under this subsection ... was previously imposed within the last 10 years.*"[23] Bradley contends that in light of this new wording, the legislature must have intended "previously convicted" to mean something other than sentencing.

▮ The State disagrees and argues that the Alaska appellate courts have consistently decided that when habitual offender statutes are based on prior convictions, the pertinent date is the day the defendant was sentenced, not the day he actually committed the offense or was found guilty. The State also contends that the second theory making a DUI a felony was added in 2004 solely to ensure that persons who had previously been convicted of felony DUI would remain subject to the felony enhancement even if the prior convictions forming the basis for the earlier DUI conviction no longer fell within the ten-year period.[24] This contention is supported by the testimony before the legislature, and there is no indication that either the House or the Senate Judiciary Committee intended to overturn or modify the Alaska appellate courts' interpretation of habitual offender statutes.[25]

23. Emphasis added.

24. *See* ch. 124, § 26, SLA 2004.

25. *See* Minutes of House Judiciary Committee on House Bill 244, March 19, 2004, testimony of Deputy Attorney General Susan Parkes, log no.

0729–0467; *see also* Minutes of Senate Judiciary Committee on Senate Bill 170, March 10, 2004, testimony of Deputy Attorney General Susan Parkes, 8:16–8:45 a.m. (discussing sections 26 & 28).

Although Bradley's position is not unreasonable, we conclude that the State's position more closely reflects the legislature's intent in cases like Bradley's. As we concluded in *Wooley v. State*,[26] when a statute imposes enhanced punishment for repeat offenders, there is a "longstanding principle of Alaska law that ... a defendant's status as a repeat offender hinges on the date of the defendant's sentencing rather than the date on which the [defendant was found guilty]."[27]

In *Wooley*, we were construing AS 11.46.130(a)(6), which elevates a theft from a misdemeanor to a felony if, "within the preceding five years, the person has been convicted and sentenced on two or more separate occasions" of certain theft-related offenses. It is true that this statute's language is slightly different than the language in AS 28.35.030(n)—rather than just saying "convicted" it says "convicted and sentenced," but the difference is not significant enough to require us to reach a different conclusion. We explained in *Wooley*:

> [T]he underlying rationale for imposing enhanced punishment on repeat offenders is the idea that a person is more blameworthy if they return to crime after being "judicially confronted with [their] prior misconduct and ... given an opportunity for reformation." The judicial confrontation and the opportunity for reformation occur at (and following) the defendant's sentencing.[28]

Other Alaska appellate court decisions support our decision in *Wooley*. For example, in *State v. Carlson*,[29] the Alaska Supreme Court interpreted the "habitual criminal" statutes that were in force before the enactment of Alaska's current criminal code to require proof that the defendant was sentenced for the prior offense before the defendant committed the present offense.[30] This same rule was applied in *Gonzales v. State*,[31] which addressed the provisions imposing enhanced punishment for repeat drug offenders.[32] In both *State v. Rastopsoff*[33] and *Sawyer v. State*,[34] this court held that for the purposes of determining a defendant's status under Alaska's presumptive sentencing laws, a defendant is not "previously convicted" of a felony unless the defendant has actually been sentenced for that felony.[35] And, recently in *State v. Hodari*,[36] the Alaska Supreme Court reasoned that "because Hodari had not been sentenced on the second felony when he attacked the family, he was considered a second felony offender for presumptive sentencing purposes."[37]

Although these cases construed different statutes, they all addressed the same principle—that a defendant's status as a repeat offender hinges on the date of the defendant's sentencing rather than the date on which the defendant was found guilty. Bradley does not point to any legislative history that suggests that the legislature has changed this principle.

We acknowledge that the legislature recently amended AS 28.35.030(n) to add a provision making DUI a felony offense based on a the date that "punishment ... was ... imposed" for a single prior felony DUI. And we understand Bradley's argument that when the legislature used this language it must have meant something different than when it used "conviction" in the same statute. But Bradley has not shown that the legisla-

---

**26.** 157 P.3d 1064 (Alaska App.2007).

**27.** *Id.* at 1065.

**28.** *Id.* at 1066 (alteration in original) (quoting *Smith v. State*, 83 P.3d 12, 16 (Alaska App.2004)).

**29.** 560 P.2d 26 (Alaska 1977), *superseded by statute on other grounds as recognized in Linn v. State*, 658 P.2d 150, 152 (Alaska App.1983).

**30.** *Id.* at 30.

**31.** 582 P.2d 630 (Alaska 1978), *superseded by statute on other grounds as recognized in Linn*, 658 P.2d at 152.

**32.** *Id.* at 636.

**33.** 659 P.2d 630 (Alaska App.1983).

**34.** 663 P.2d 230 (Alaska App.1983).

**35.** *Sawyer*, 663 P.2d at 231–32; *Rastopsoff*, 659 P.2d at 640–641.

**36.** 996 P.2d 1230 (Alaska 2007).

**37.** *Id.* at 1231.

ture intended to overturn the long history of case law construing "previous conviction" to mean the date of sentencing when enhancing punishment for repeat offenders. Accordingly, we conclude that Judge Card properly found that Bradley was guilty of felony DUI based on his two prior qualifying DUI convictions.

Bradley also argues that our interpretation of the statute should be guided by the rule of lenity—the rule that ambiguities in criminal statutes should construed against the government.[38] But the rule of lenity cannot easily be applied in this case.

If we construe the statute as Bradley wishes—that is, if we construe it so that the crucial date is the date on which a defendant pleads guilty or is found guilty, as opposed to the date on which the defendant is sentenced and a formal judgment of conviction is entered against the defendant—this construction of the statute will benefit defendants in Bradley's situation, but it will disadvantage defendants in other situations.

Take, for instance, a defendant who is found guilty of a second DUI and then, before sentencing, commits a third DUI. Under the rule of law propounded in *Wooley, Carlson,* and similar cases, this third DUI would still be a misdemeanor—because it was committed before the defendant was sentenced for the second DUI. But under Bradley's construction of the statute, this third DUI would be a felony.

In other words, this is not a situation where one interpretation of the statute will favor defendants and the other interpretation will favor the government. Rather, either interpretation of the statute will benefit some defendants and will disadvantage others. For this reason, the rule of lenity does not yield an answer to the question before us.

*Conclusion*

The judgment of the superior court is AFFIRMED.

---

**38.** *See McDole v. State,* 121 P.3d 166, 169 (Alaska App.2005).